Claudia **KENDRICK** and Lourdes Almonte, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. 90 Civ. 3776 (RJW).

United States District Court,
S.D. New York.

Feb. 13, 1992.

Cardozo Bet Tzedek Legal Services (Toby Golick, Johnathon Ben–Asher, of counsel) Legal Services for the Elderly (David Udell, Jonathan A. Weiss, of counsel) MFY Legal Services (Jill Boskey, of counsel), Harlem Legal Services (Robert A. Kahn, of counsel), New York City, for plaintiffs.

Otto G. Obermaier U.S. Atty. for the Southern District of New York (Sapna V. Raj, Sp. Asst. U.S. Atty., of counsel), New York City, for defendant.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs move, pursuant to Rule 23, Fed.R.Civ.P. for an order certifying this case as a class action on behalf of all claimants whose claims have been or will be assigned to Administrative Law Judge Helen Anyel ("ALJ Anyel") for decision, and all claimants who have received an adverse decision from ALJ Anyel, not reversed on any subsequent appeal. Defendant Louis W. Sullivan, Secretary of Health and Human Services (the "Secretary") moves, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss the complaint. Defendant further moves for an order, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), remanding the claim of named plaintiff Lourdes Almonte ("Almonte") to the Secretary. Plaintiffs cross-move for judgment on the pleadings, reversing the decision of the Secretary denying Almonte's claim for disability benefits, or, in the alternative, granting Almonte interim benefits until the issuance of a new administrative decision upon remand.

For the reasons that follow, defendant's motion to dismiss is denied and plaintiffs'

motion for class certification is granted. The Secretary's motion to remand is granted with respect to the period prior to January 25, 1988 and is otherwise denied, and plaintiffs' cross-motion for judgment on the pleadings is granted.

## BACKGROUND

Disabled persons who are unable to work to support themselves are eligible for government benefits through the Social Security Disability Insurance Program ("Social Security") and the Supplemental Security Income Program ("SSI"). 42 U.S.C. §§ 423, 1382. In order to obtain benefits, a claimant must first file an application documenting his claim with the Secretary. 20 C.F.R. § 404.610. If the Secretary denies the claim initially and on reconsideration, the claimant may then request a hearing before an administrative law judge. *Id.* at § 404.930. ALJ Anyel is an administrative law judge employed by the Secretary to adjudicate claims for benefits under the Social Security Act.

### *Facts Relating to the Claims of the Proposed Class*

In the instant action, plaintiffs, on behalf of all claimants for Social Security or SSI benefits whose claims were denied by ALJ Anyel, allege that ALJ Anyel is biased against claimants generally. Plaintiffs claim that ALJ Anyel's bias and refusal to apply applicable law deprives claimants of fair hearings on their claims, in violation of the Social Security Act and the due process clause of the Fifth Amendment to the United States Constitution.

In support of their claim that ALJ Anyel is generally biased, plaintiffs allege numerous deficiencies in the manner in which ALJ Anyel conducts hearings. Among the flaws alleged by plaintiffs are that ALJ Anyel sometimes fails to give claimants adequate prior notice of hearings; that she routinely fails to explain to unrepresented claimants the advisability of obtaining counsel; that she forces unrepresented claimants to proceed without an attorney, even if they indicate they wish to obtain counsel; and that she routinely fails to obtain the services of interpreters in cases where it is apparent that the claimant has difficulty speaking or understanding English. Plaintiffs further claims that ALJ Anyel routinely fails to elicit information at hearings about the claimant's medical condition and the restrictions such condition imposes on the claimant's activities, and that she fails to obtain medical reports from claimants' treating sources or to advise claimants to do so.

In addition to ALJ Anyel's alleged failure to conduct adequate hearings, plaintiffs also claim that her decisions are marked by certain characteristic errors. According to plaintiffs, ALJ Anyel routinely determines that the claimant's complaints of pain are not credible, based on her alleged failure to observe signs of discomfort during hearings lasting fewer than 15 minutes. Plaintiffs claim that ALJ Anyel often omits from her decisions important information favorable to the claimant's case, such as findings of disability by treating sources. In addition, plaintiffs allege that ALJ Anyel routinely ignores the law, including both applicable statutes and court decisions, in order to deny valid claims. Finally, plaintiffs claim that ALJ Anyel fails to follow specific directions to her by courts and the Appeals Council when they remand cases, and although repeatedly criticized by the courts and the Appeals Council, she has failed to modify her abusive conduct towards claimants.

### *Facts Relating to Almonte's Individual Claim for Benefits*

Almonte is a 54 year-old widow who attended school through the 8th grade in Santo Domingo. She is able to read and write in Spanish but is unable to communicate in English. She suffers from multiple medical conditions, including low back syndrome due to osteoarthritis, glaucoma, ulcer and heart disease. Almonte was last employed in 1975, performing unskilled work in a garment factory.

Almonte first applied for disability benefits on December 11, 1985, stating that she was unable to work due to lower back pain and an ulcer. Her application was denied

initially and on reconsideration, and she requested a hearing which was conducted before Administrative Law Judge Lawrence P. Ashley ("ALJ Ashley").

At the hearing, Almonte presented evidence that she suffered from glaucoma, an ulcer and chronic lower back syndrome. On February 5, 1987, ALJ Ashley issued a decision denying benefits on the ground that Almonte could perform a full range of light work, and therefore under the applicable medical-vocational regulations she was not disabled.

Almonte did not appeal ALJ Ashley's decision. Instead, on July 13, 1987, she filed another application for SSI benefits. This application was denied, and Almonte subsequently filed another application on September 21, 1988, which was again denied. After the denial of benefits was affirmed on reconsideration, Almonte requested a hearing which was held on August 15, 1989 before ALJ Anyel. Almonte was not represented by counsel at the hearing.

On December 20, 1989, ALJ Anyel issued a decision denying benefits. In the decision, ALJ Anyel stated that ALJ Ashley's previous decision was "rese [sic] judicata" because Almonte had not appealed that decision. Tr. 11.[1] The decision explicitly adopts the factual findings made by ALJ Ashley in his earlier decision. ALJ Anyel found that while Almonte had low back syndrome, open angle glaucoma and left cardiac atrial hypertrophy, she did not have an impairment or combination of impairments that significantly limited her ability to perform work-related tasks, and was therefore not disabled. Tr. 14.

By decision dated August 3, 1990, the Appeals Council denied Almonte's request for review. Almonte, proceeding *pro se*, then commenced a federal court action, seeking review of the Appeals Council's decision.

---

**1.** "Tr." refers to the transcript of the administrative record, filed by the Secretary on May 3, 1991.

*Procedural History*

Plaintiffs initiated this lawsuit on June 4, 1990, and subsequently moved for class certification, and for an order permitting the intervention of two additional claimants for disability benefits whose claims had been adversely decided by ALJ Anyel and granting all named plaintiffs interim payments of disability benefits pending a readjudication of their administrative claims. Before the plaintiffs' motion was fully submitted, the Secretary awarded benefits to the proposed intervenors. The Secretary then settled the individual claim of named plaintiff Claudia Kendrick ("Kendrick") pursuant to a stipulation so ordered on November 27, 1990. On April 18, 1991, the Court denied plaintiffs' application for intervention and interim benefits and reserved decision on the remainder of the motion.

On December 12, 1990, plaintiffs moved to consolidate this case with *Almonte v. Sullivan,* 90 Civ. 6662, in which Almonte appeals from the adverse decision by ALJ Anyel described above. On April 18, 1991, the Court granted plaintiffs' motion for consolidation. On May 3, 1991, the Secretary moved to dismiss the complaint, and filed a second motion seeking an order remanding Almonte's claim to the Secretary for readjudication. Plaintiffs then cross-moved for judgment on the pleadings regarding Almonte's claim for benefits.

In or about May 1991, defendant commenced an administrative removal action before the Merit Systems Protection Board ("MSPB"), seeking permanent removal of ALJ Anyel. The grounds of the action, as stated in a preliminary notice supplied by the Secretary to this Court are "(1) unacceptable performance of her judicial functions, and (2) frequent violation of agency policy and denial of due process of law with respect to pro se claimants." Notice and Order, dated May 22, 1991, attached to letter dated June 3, 1991 from Sapna V. Raj. On February 7, 1992, the Secretary informed the Court that the Appeals Coun-

cil has identified and given expedited consideration to all pending requests for review of cases decided by ALJ Anyel. Letter dated February 7, 1992 from Sapna V. Raj.

Following the initiation of the removal proceedings against ALJ Anyel, the parties entered into negotiations in an attempt to settle this lawsuit. Unfortunately, these negotiations proved unsuccessful. The Court now has before it defendant's motion to dismiss, plaintiffs' motion for class certification and the cross-motions concerning Almonte's individual claim, which it will address in turn.

## DISCUSSION

### I. *Waiver of the Bias Claim*

The Secretary initially contends that the Court lacks jurisdiction to hear plaintiffs' claim regarding ALJ Anyel's alleged bias, because plaintiffs failed to present this claim to the Social Security Administration. Neither of the named plaintiffs raised the issue of ALJ Anyel's alleged predisposition to deny claims at their hearings or in their requests for administrative review of her decisions. Nor do the allegations concerning the claims of the proposed class contain any mention of an administrative determination regarding ALJ Anyel's alleged bias.

The Secretary points to Social Security regulations which provide claimants with a means for challenging an administrative law judge's impartiality, and which require the claimant to raise the issue of bias at the "earliest opportunity" prior to the administrative hearing. 20 C.F.R. §§ 404.940 and 416.1440. The Secretary also points to a provision of the Administrative Procedure Act, which, he contends, requires that the question of bias be determined initially at the administrative level:

> On the filing in good faith of a timely and sufficient affidavit of personal bias or other disqualification of a presiding or participating employee, the agency shall determine the matter as a part of the record and decision in the case.

5 U.S.C. § 556(b). The Secretary argues that plaintiffs waived the issue of bias by failing to raise it during the administrative proceedings in the manner specified in the regulations.

■ The Secretary is correct in asserting that, in most instances, a claim must be raised at the administrative level before a reviewing court may consider it. *See, e.g., Correa v. Thornburgh*, 901 F.2d 1166, 1171 (2d Cir.1990). This general rule is not jurisdictional however, but prudential. *Nat'l Black Media Coalition v. F.C.C.*, 791 F.2d 1016, 1021 (2d Cir.1986); *American Maritime Ass'n v. United States*, 766 F.2d 545, 566 n. 30 (D.C.Cir.1985). In order to determine any jurisdictional limitations on the Court's ability to consider the claim of bias asserted here, the Court must turn to the specific statutory provisions governing its jurisdiction.

■ The Court has jurisdiction to review decisions of the Secretary denying disability benefits under 42 U.S.C. §§ 405(g) and 1383(c). Section 405(g) outlines the scope of judicial review and provides that review may be had from a "final" decision of the Secretary. The final decision rule gives rise to an exhaustion requirement, consisting of a waivable and a non-waivable element. *State of New York v. Sullivan*, 906 F.2d 910, 917 (2d Cir.1990). The jurisdictional, non-waivable element requires that an applicant for disability benefits present a claim for benefits, while the waivable element requires that the applicant exhaust the administrative remedies prescribed by the Secretary. *Id.; Mathews v. Eldridge*, 424 U.S. 319, 328–30, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976).

■ The Secretary's argument concerns plaintiffs' failure to raise the bias issue in the manner prescribed by the regulations, and thus relates only to the waivable component of the exhaustion requirement. Ordinarily, the Secretary has discretion to decide when to waive the condition that administrative remedies be exhausted, but a court may also do so under the appropriate circumstances. *City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir.1984), *aff'd. sub nom. Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Waiver may be grant-

ed when the legal claim is collateral to the demand for benefits, exhaustion of remedies would be futile and enforcement of the exhaustion requirement would cause the claimant irreparable injury. *State of New York v. Sullivan, supra,* 906 F.2d at 918. No one element is critical to the decision, but rather "a more general approach, balancing the competing considerations to arrive at a just result, is in order." *Id.*

■ Here, plaintiffs' claim that they are entitled to have their cases heard by an impartial administrative law judge is entirely collateral to any substantive claim they may have. The relief sought on behalf of the proposed class members is readjudication of their benefits claims, not a grant of benefits. *See Bowen v. City of New York, supra,* 476 U.S. at 483, 106 S.Ct. at 2031.

In addition, requiring plaintiffs to present their bias claim at the administrative level would serve no purpose. Exhaustion should be required when a claim "could benefit from further factual development and refinement through the administrative process" *Heckler v. Lopez,* 463 U.S. 1328, 1336, 104 S.Ct. 10, 14, 77 L.Ed.2d 1431 (Rehnquist, Circuit Justice 1983); *see also Smith v. Schweiker,* 709 F.2d 777, 780 (2d Cir.1983). Here, the administrative process available to disability claimants does not provide an adequate means of developing the facts with respect to the fairness of those claimants' hearings.

This case does not present the ordinary situation warranting disqualification, where the claimant could be expected to be aware that the administrative law judge has a particular, specific interest or predisposition regarding his claim. Plaintiffs allege instead that they were the victims of a generalized bias of which they could not have been cognizant at the time their administrative hearings were held. In order to have raised the claim of bias prior to their administrative hearings, each plaintiff would have needed access to information not included in his or her own administrative record.

The regulations governing disability hearings do not provide for the type of prehearing discovery necessary to uncover such information. *See* 42 U.S.C. § 405(d). The Third Circuit, in considering a claim of generalized bias of an administrative law judge, stated that "the absence of a discovery mechanism during the agency proceeding ... mean[s] that facts with respect to the fairness of that proceeding can be developed only in district court." *Hummel v. Heckler,* 736 F.2d 91, 93 (3d Cir.1984).

Moreover, the regulation governing disqualification of an administrative law judge does not appear to apply to situations in which the administrative law judge evinces a general, rather than a particularized bias against a claimant. That regulation provides in pertinent part:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial *with respect to any party* or has any interest *in the matter pending for decision.*

20 C.F.R. § 404.940 (emphasis added). Thus, if plaintiffs were required to present their bias claim at the administrative level, they would simply be confronted with administrative procedures which are not designed to address the problem of an administrative law judge who is generally biased against claimants. Indeed, as discussed below, the Secretary argues that plaintiffs are not entitled to relief here because the Social Security regulations do not allow for disqualification of an administrative law judge on the ground of general bias and unfitness.

Plaintiffs' allegations regarding the potential harm the proposed class members would suffer if they were required to exhaust their administrative remedies regarding the bias claim are also sufficient to warrant waiver. Plaintiffs allege that many claimants whose benefits have been denied by ALJ Anyel are unrepresented and fail to appeal or make technical mistakes in pursuing their appeals which prevent their appeals from being considered on the merits. Furthermore, even when claimants pursue appeals, plaintiffs claim that it may take months or years to obtain relief from an adverse decision, during which time the claimants are obliged to subsist without benefits.

The Second Circuit has repeatedly recognized that disability claimants whose benefits are denied are potentially subject to deteriorating health and even death as a result of the strain of going through the administrative appeal process. *State of New York v. Sullivan, supra,* 906 F.2d at 918; *City of New York v. Heckler, supra,* 742 F.2d at 736. In such a situation, the receipt of retroactive benefits cannot compensate claimants for the financial and psychological hardship they must endure by living without benefits during the appeals process. Furthermore, a court should be "especially sensitive to this kind of harm where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." *Bowen v. City of New York, supra,* 476 U.S. at 484, 106 S.Ct. at 2032.

Because all of the relevant factors favor waiving the condition that administrative remedies be exhausted, the Court is of the view that plaintiffs did not lose their right to present their bias claim here by failing to present it at the administrative level.[2]

## II. *The Secretary's Rule 12(b)(6) Motion*

■ The Secretary next argues that plaintiffs' complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss for failure to state a claim upon which relief may be granted, a court is required to accept the facts alleged in the complaint as true. *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). The court must read the complaint generously, and draw all reasonable inferences in favor of the plaintiff. *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986); *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985), *modified,* 793 F.2d 457 (2d Cir.

1986). The complaint may be dismissed only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991).

■ "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Thus, a court deciding a motion to dismiss under Rule 12(b)(6) may only consider the facts stated in the pleading, which include the complaint, the exhibits to the complaint or documents incorporated into the complaint by reference. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985). A court may also consider matters of which judicial notice may be taken under Rule 201, Fed. R.Evid. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). With these principles in mind, the Court now turns to the Secretary's motion.

The first argument the Secretary advances in support of dismissal under Rule 12(b)(6) is that in seeking an order prohibiting the assignment of new cases to ALJ Anyel, plaintiffs effectively seek her removal as an administrative law judge. The Civil Service Reform Act provides that in most cases, an administrative law judge may not be removed except for "good cause." 5 U.S.C. § 7521 (1980). According to the Secretary, the exclusive means of removing an administrative law judge is through an action before the MSPB. Such an action may not be initiated by private citizens, and, the Secretary contends, plaintiffs may not use the vehicle of a federal lawsuit to circumvent this procedure.

---

**2.** In addition, to the extent that plaintiffs' bias claim is constitutional as well as statutory, they were not required to raise it at the administrative level before presenting it in federal court. As the Supreme Court pointed out in *Mathews v. Eldridge, supra,* "[i]t is unrealistic to expect that

the Secretary would consider substantial changes in the current system of administrative review at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." 424 U.S. at 330, 96 S.Ct. at 900.

Plaintiffs respond that disability claimants have a statutory and constitutional right to a fair administrative hearing which is denied whenever the Secretary assigns claims to ALJ Anyel.

The parties' contentions regarding the assignment of new disability claims to ALJ Anyel raise thorny problems of statutory and constitutional interpretation which the Court need not reach at this time. ALJ Anyel has been suspended from active duty pending the determination of the administrative removal action by the MSPB. Should the MSPB decide that removal of ALJ Anyel is warranted, that portion of plaintiffs' claim that seeks to prevent the assignment of new claims to ALJ Anyel will be rendered moot. Therefore, to the extent that the Secretary seeks dismissal of that portion of the complaint seeking a prohibition on the assignment of new claims to ALJ Anyel, the Court denies the motion at this time without prejudice to renewal following the decision of the MSPB.

The second basis for the Secretary's Rule 12(b)(6) motion is his contention that plaintiffs have failed to make out a claim of bias that is judicially cognizable or remediable. According to the Secretary, in order to state a claim of bias, a plaintiff must allege that the adjudicator has a predisposition to rule against a specific party. The Secretary argues that none of the conduct alleged in the complaint is sufficient to show that ALJ Anyel was predisposed to deny any particular claim. Therefore, the Secretary contends, the alleged legal and procedural errors in ALJ Anyel's decisions are simply erroneous decisions and cannot be related to bias.

■ The right to an impartial adjudication is a basic element of due process. This aspect of due process applies equally in an administrative setting as it does in a judicial forum. *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1669, 72 L.Ed.2d 1 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973). Indeed, the relative lack of procedural protections in an administrative proceeding has been recognized as a basis for stricter application of the requirement that administrative decision-makers be impartial. *Hummel v. Heckler, supra,* 736 F.2d at 93.

■ The Social Security Act also implicitly guarantees impartial decisions of benefit applicants' claims. 42 U.S.C. §§ 405(b)(1), 1383(c)(1); *see Stieberger v. Heckler,* 615 F.Supp. 1315, 1387 (S.D.N.Y.1985), *vacated on other grounds,* 801 F.2d 29 (2d Cir. 1986). The Administrative Procedure Act reinforces this implicit guarantee by establishing statutory safeguards designed to protect the independence of administrative law judges. *See, e.g.,* 5 U.S.C. §§ 4301(2)(D), 5372, 7521(a). While administrative law judges do not bear all the badges of independence that characterize Article III judges, they must adhere to the same standard of impartial decision-making. *Barry v. Bowen,* 825 F.2d 1324, 1330 (9th Cir.1987); *Stieberger v. Heckler, supra,* 615 F.Supp. at 1387.

■ Thus, an administrative law judge may not act in a systematically biased manner in deciding cases. Rather, an administrative law judge is required to reach decisions by impartially applying the legal rules to the facts established by the record in each case. In addition, when a claimant is unrepresented, an administrative law judge has an affirmative duty to assist the claimant in developing the record. *Echevarria v. Sec'y of Health & Human Services,* 685 F.2d 751, 755 (2d Cir.1982).

■ Plaintiffs' allegations, if substantiated, describe serious violations of disability claimants' right to a fair hearing. Moreover, the Court notes that many federal court decisions reviewing ALJ Anyel's denial of claims appear to support these allegations.

Reviewing courts considering cases decided by ALJ Anyel have found instances in which unrepresented claimants who wished to obtain counsel were required to proceed *pro se*. In *Spears v. Heckler*, 625 F.Supp. 208, 209 (S.D.N.Y.1985), ALJ Anyel insisted that a mentally impaired claimant whose Legal Aid attorney was temporarily

unavailable due to a strike go forward with her hearing unrepresented or face the prospect of having her claim dismissed. *See also Lora v. Bowen,* No. 85 Civ. 7063, slip op., 1987 WL 16151 (S.D.N.Y. August 17, 1987). Such behavior is particularly troubling in light of the numerous decisions in which ALJ Anyel has been reversed for failing to adequately develop the record in cases involving *pro se* claimants.[3]

Also consistent with plaintiffs' allegations are several instances in which ALJ Anyel failed to follow specific directions from reviewing courts or the Appeals Council.[4] In one particularly egregious case, *Smith v. Heckler,* No. 82 Civ. 4021, slip op., 1985 WL 3845 (S.D.N.Y. Nov. 8, 1985), an action was remanded to ALJ Anyel because her initial denial of the claim was based on the then erroneous view that an allegation of disabling pain must be supported by objective clinical findings. On remand, ALJ Anyel again denied the claim, stating:

The comment of the undersigned in her early [sic] opinion that the treating physician did not substantiate his findings with laboratory or clinical findings is totally correct.

The judge in that case remanded a second time, with an instruction that the case be assigned to another administrative law judge.

ALJ Anyel has also been frequently criticized by reviewing courts for insensitive behavior towards disability claimants. *Lora v. Bowen, supra,* slip op. ("[T]he ALJ's failure to probe with patience and sensitivity into the claims of an individual who cannot speak English leads this Court to direct the Secretary to assign the case on remand to another ALJ.") In *Spears v. Heckler, supra,* 625 F.Supp. at 219–20, this

Court directed that the case be assigned on remand to an administrative law judge other than ALJ Anyel due to her failure to comment on or include in her decision any mention of the claimant's "obvious disorientation and difficulty in answering even simple questions." In *Pedroza v. Bowen,* No. 85 Civ. 3650, slip op., 1989 WL 296875 (S.D.N.Y. Oct. 6, 1989), the court adopted a magistrate's report containing the following commentary on ALJ Anyel's behavior in conducting a hearing:

[T]he ALJ's cavalier and insensitive treatment of Pedroza, an untutored, unsophisticated claimant, during her hearing was unforgivable, and may well be indicative of an unspecific bias, but bias nonetheless, against Pedroza. The sarcastic comments, constant interruptions and callous disregard for the concerns of another leave this court dismayed. We, therefore recommend, as we have in other cases where this ALJ was involved, that upon remand the case be assigned to an ALJ other than ALJ Anyel.

(footnotes omitted).

Plaintiffs need not demonstrate that they will prevail on the merits of their claim in order to defeat the Secretary's motion to dismiss, and, indeed, it would be inappropriate to pass on the merits of this case at this time. Nonetheless, the numerous sharply worded criticisms coming from federal judges and magistrate judges contained in the decisions discussed above are quite serious and highly disturbing to this Court. The Court concludes that plaintiffs have adequately alleged that ALJ Anyel's conduct deprived disability claimants of their right to a fair and impartial hearing. Accordingly, the balance of the Secretary's motion is denied.

---

**3.** *Lora v. Bowen, supra,* (failure to advise claimant to obtain detailed diagnosis from treating physician); *Dozer v. Bowen,* No. 85 Civ. 9394, slip op., 1986 WL 14914 (S.D.N.Y. Dec. 23, 1986) (failure to question claimant regarding medical condition or advise her to obtain medical records from treating physician); *Spears v. Heckler, supra,* 625 F.Supp. at 219 (failure to question claimant regarding medical condition); *Musch v. Heckler,* No. 84 Civ. 3309, slip op.,

1985 WL 1619 (S.D.N.Y. June 11, 1985) (improperly limiting claimant's testimony).

**4.** *Sanchez v. Sullivan,* No. 88 Civ. 7710, slip op. (S.D.N.Y. Oct. 25, 1989) (failure to follow Appeals Council's direction to obtain testimony of board-certified neurologist); *Lilly v. Heckler,* No. 75 Civ. 4653, slip op., 1984 WL 216 (S.D.N.Y. April 18, 1984) (failure to follow treating physician rule after explicit direction from reviewing court).

## III. *Class Certification*

Plaintiffs seek certification of a class, pursuant to Rule 23(a) and (b)(2), Fed. R.Civ.P., including all claimants for Social Security benefits whose claims have been or will be assigned to ALJ Anyel for decision, and all claimants who have received an adverse decision from ALJ Anyel, not reversed on any subsequent appeal.

Rule 23 governs the certification of class actions and has as its main objectives the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1754.

Pursuant to Rule 23(a), one or more members of the class may sue or be sued upon the meeting of four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class and; (4) the representative parties will fairly and adequately protect the interests of the class.

Once these criteria have been satisfied, plaintiffs must also satisfy the requirement of Rule 23(b)(2) that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

According to plaintiffs, the proposed class numbers in the hundreds, if not thousands. Although the individual identities of the proposed class members are known only to defendant, plaintiffs point out that according to defendant's own records, ALJ Anyel was assigned 678 claims in 1988, of which she denied 416. Affidavit of Toby Golick, filed June 26, 1990 at ¶ 4. Court decisions reviewing ALJ Anyel's denials of claims reflect that she had been sitting from at least 1984 until her suspension in 1991.

Plaintiffs claim that questions of law and fact common to the class include whether ALJ Anyel is biased against all disability claimants and whether her misconduct, uncorrected by the Secretary, deprives claimants of their right to a fair hearing. The named plaintiffs had their claims decided adversely by ALJ Anyel and assert that ALJ Anyel was biased against them, predisposed to deny their claims and unwilling to follow applicable law.[5]

The Secretary raises a host of objections to class certification, which when reduced to their essentials, can be restated as two principal arguments: first, that the proposed class is overbroad and, when defined in an appropriately narrow way, fails to meet the numerosity requirement of Rule 23(a)(1); and second, that the claims of the proposed class members do not contain common questions of law and fact sufficient to meet the requirements of Rule 23(a)(2).

The Secretary's first objection to certification concerns the inclusion of claimants

---

5. The Secretary seeks dismissal of named plaintiff Kendrick's claim, arguing that her claim became moot when the parties settled her individual claim for benefits. As a general rule, a class action may not be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified. *Swan v. Stoneman*, 635 F.2d 97, 102 n. 6 (2d Cir.1980) (citing *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975)). Here, Kendrick's claim had not been resolved at the time of the filing of the complaint or at the time the motion for class certification was filed. While the parties stipulated as to her entitlement to benefits prior to the Court's ruling on the class certification motion, in such situations, a named plaintiff's claim may be said to "relate back" to the filing of the complaint. *See Sosna v. Iowa, supra,* 419 U.S. at 402 n. 11, 95 S.Ct. at 559 n. 11. In any event, named plaintiff Almonte's claim remains unresolved at this time and the claims of the other class members are clearly still alive. Thus, the case is not mooted by virtue of the settlement of Kendrick's claim. *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir.1991). In such a situation, a named plaintiff may continue to represent a class despite the fact that his individual claim is moot. *Id.* Since defendant has advanced no other argument relating to Kendrick's ability to act as a representative of the proposed class, the Court concludes that she may continue to do so.

in the proposed class who have not met the requirements for federal court review of the Secretary's denial of their claim as outlined in 42 U.S.C. § 405(g).[6] The Secretary contends that most if not all of the proposed class members fail to meet the requirements of § 405(g) and are therefore ineligible for federal court redress of their claims. According to the Secretary, once these ineligible individuals are excluded from the proposed class, the remaining members are too few in number to satisfy the numerosity requirement.

Section 405(g) sets forth two prerequisites to federal court review of the Secretary's decisions. First, claimants are normally required to exhaust administrative remedies before seeking relief in federal court. For the reasons stated above, in the discussion of plaintiffs' bias claim, the Court is of the view that waiver of the exhaustion requirement is warranted here. Therefore, the Court will confine its discussion here to the second requirement of § 405(g), that claims be presented to the district court within 60 days of the Secretary's final decision.

The 60–day appeal requirement has been held to be a limitations period and not a jurisdictional limitation. *Mathews v. Eldridge, supra,* 424 U.S. at 328, n. 9, 96 S.Ct. at 899, n. 9; *Bowen v. City of New York, supra,* 476 U.S. at 478, 106 S.Ct. at 2029. Equitable tolling of this limitations period "is not infrequently appropriate as Congress intended to be unusually protective of claimants in this area." *Canales v. Sullivan,* 936 F.2d 755, 758 (2d Cir.1991). While in most cases the decision concerning whether it is proper to extend the limitations period is left to the Secretary, in certain cases the equities in favor of tolling are "so great that deference to the agency's judgment is inappropriate." *State of New York v. Sullivan, supra,* 906 F.2d at 917 (quoting *Mathews v. Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. at 900).

Equitable tolling is appropriate in situations where plaintiffs could not have been aware of the susceptibility of the Secretary's decision to court challenge at the time they allowed their judicial remedies to expire. In *State of New York v. Sullivan, supra,* 906 F.2d at 917, the Court of Appeals held that equitable tolling was proper where the Secretary adopted, but failed to make public, rules governing the evaluation of disability claims involving certain forms of heart disease. The Supreme Court similarly held in *Bowen v. City of New York, supra,* 476 U.S. 467, 106 S.Ct. 2022, that tolling was warranted in the cases of mentally impaired disability plaintiffs whose claims were denied pursuant to an unstated government policy. In arriving at its holding, the Court relied in part on the following point:

> All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge.

*Id.* at 480–81, 106 S.Ct. at 2030–31 (quoting *City of New York v. Heckler, supra,* 742 F.2d at 738)). This reasoning applies equally in the instant action. This case does not resemble *Pittston Coal Group v. Sebben,* 488 U.S. 105, 123, 109 S.Ct. 414, 424, 102 L.Ed.2d 408 (1988), where agency action was taken pursuant to a published regulation of which the parties should have been aware. If, as plaintiffs allege, ALJ Anyel was biased against disability claimants in all cases, none of the individual members of the proposed class could have been aware of such a generalized bias at the time of his

---

**6.** In addition to his objections concerning the requirements of § 405(g), the Secretary objects to the inclusion in the proposed class of claimants whose cases will be assigned to ALJ Anyel in the future. Since no claims are currently being assigned to ALJ Anyel, the Court is of the view that consideration of arguments addressing this issue is premature at this time. Should the Secretary recommence assignment of cases to ALJ Anyel at some point in the future, the Court would then be available to hear the parties on the question of whether those claimants should be included in the class.

or her hearing. Therefore, equitable tolling of the limitations period is warranted here, and those individuals whose claims were denied by ALJ Anyel and allowed the 60–day period to lapse are appropriately included in the proposed class.[7]

The second ground on which the Secretary objects to class certification is his contention that the claims of the proposed class members do not present sufficient common questions of law and fact to warrant treatment of this case as a class action. According to the Secretary, in Social Security disability cases, the facts underlying each claim are different and each hearing is unique. Thus, the Secretary contends, each claim turns on its specific factual circumstances and is so individualized that certification would be improper here.

 The Secretary's argument fundamentally misapprehends the nature of plaintiffs' claims. While the proposed class members' individual claims for benefits are indeed fact specific, in this case plaintiffs raise a more general claim concerning the nature of the hearing accorded the proposed class members. Plaintiffs do not seek to prove that ALJ Anyel committed errors in one or more of her decisions but instead that she is predisposed to deny claims in each and every one of her cases. In order to prevail, plaintiffs must establish that ALJ Anyel's bias is so pervasive that all of her decisions are presumptively tainted. While this may be a difficult hurdle to overcome, the difficulty goes to the merits of plaintiffs' claim and not to its amenability to class treatment.

Accordingly, because the Court determines that the action satisfies the prerequisites of subdivisions (a) and (b)(2) of Rule 23, Fed.R.Civ.P., plaintiffs' motion for class certification is granted.

IV. *The Cross–Motions Regarding Almonte's Individual Claim for Benefits*

The Secretary has moved to remand the individual claim of named plaintiff Almonte

for further administrative proceedings. Plaintiffs do not oppose defendant's motion for the period of time prior to January 25, 1988, but cross-move for judgment on the pleadings with respect to the period beginning on that date. Plaintiffs argue that the application of controlling law to the administrative record establishes that Almonte is disabled and entitled to an award of benefits.

 A court's function in reviewing the Secretary's findings is a limited one. The court must assess whether substantial evidence in the record supports the Secretary's findings, and if so, these findings are conclusive. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence in this context has been defined as "more than a mere scintilla; it is such relevant evidence as a reasonable person might accept to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The Secretary's decision must be affirmed if supported by substantial evidence and not the product of legal error.

 A disability claimant is considered legally disabled if he is incapable of substantial gainful activity due to a physical impairment that has lasted or can be expected to last for a period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To qualify for disability benefits, the claimant must be unable to perform his previous work or any other kind of substantial work. *Dousewicz v. Harris*, 646 F.2d 771, 772 (2d Cir.1981).

 In order to establish a *prima facie* case of disability, the claimant must show that his impairment prevents his return to his prior employment. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). The burden then shifts to the Secretary to "produce evidence to show the existence in the national economy of alternative substantial

---

7. The Secretary argues that any proposed class members who have pursued their judicial appeals and received a final judgment denying their claims may not be included in the class. Any such cases would indeed be *res judicata,* and the appropriate course to be followed by such claimants would be a motion under Rule 60, Fed.R.Civ.P., to the court that rendered the judgment.

gainful work which the plaintiff could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

■ After Almonte's first hearing in December, 1986, ALJ Ashley found that Almonte could not return to her past relevant work. Tr. 20. Thus the remaining issue to be determined was whether she could engage in any substantial gainful activity that existed in the national economy. To make this determination, the administrative law judge was required to consider Almonte's "residual functional capacity" and her "age, education and work experience." 20 C.F.R. § 404.1505(a); *Vargas v. Sullivan,* 898 F.2d 293, 294 (2d Cir.1990). The Secretary has prepared a medical-vocational grid which governs such determinations and reflects an analysis of the effect of the factors listed above on what type of work, if any, an individual is capable of performing. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Vargas v. Sullivan, supra,* 898 F.2d at 294.

ALJ Ashley found that Almonte was capable of performing a full range of light work. Tr. 20. The medical-vocational grid applicable to a person who is capable of light work mandates a finding of "not disabled" for a person under the age of 50 who is illiterate or unable to communicate in English and who is unskilled or has no previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.16. Since Almonte was under age 50 at the time ALJ Ashley considered her claim, he ruled that she was not disabled. Tr. 21. Because Almonte did not appeal this decision, it became final and binding. 20 C.F.R. § 404.955.

Plaintiffs argue that it was error for ALJ Anyel to find that Almonte was not disabled, since in her decision ALJ Anyel formally adopted the findings of ALJ Ashley. In so doing, they contend, she necessarily adopted the finding that Almonte was limited to "light work." While ALJ Anyel ultimately found that Almonte had no impairments which significantly limited her work-related activities, plaintiffs argue that ALJ Anyel arrived at this conclusion without providing any justification for departing from the findings made by ALJ Ashley. Since Almonte turned 50 on January 25, 1988, plaintiffs argue that the medical-vocational guidelines mandate a finding that she was disabled as of that date.

■ The principles of *res judicata* apply to administrative decisions, although the doctrine is applied less rigidly in the administrative setting than in a judicial one. *See Union Mfg. Co. v. Han Baek Trading Co., Ltd.,* 763 F.2d 42, 44–46 (2d Cir.1985). A final decision of the Secretary may be reopened under certain limited circumstances, such as when new and material evidence is furnished or when there is a clear error on the face of the decision. 20 C.F.R. § 404.989. Here, ALJ Anyel cited no reason for departing from the finding that Almonte was incapable of performing more than light work. Nor does any of the evidence presented at the second hearing support such a departure. Moreover, the language of the decision itself precludes such an interpretation. The decision states unequivocally: "This case is not being reopened. The previous Administrative Law Judge's findings are incorporated by reference." Tr. 12.

It was error for ALJ Anyel to disregard the finding of ALJ Ashley that Almonte was limited to light work in the absence of new evidence at the second hearing that would support such a departure. Instead, ALJ Anyel should have considered the change in Almonte's age status as a changed circumstance warranting a departure from ALJ Ashley's ultimate finding of no disability. *See Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir.1988). The table applicable to individuals with a residual functional capacity for light work requires a finding of "disabled" for individuals over 50 who are illiterate in English and are unskilled or have no prior work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.09. Since both ALJ Ashley and ALJ Anyel found that Almonte is unskilled and unable to communicate in English, a finding that she is disabled and entitled to benefits as of January 25, 1988 was mandated.

"Where application of correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bow-*

*en,* 817 F.2d 983, 986 (2d Cir.1987). Accordingly, the Secretary's decision is reversed as to the period beginning January 25, 1988. The case is remanded for further administrative proceedings with respect to the period prior to January 25, 1988, and for the purpose of calculating benefits to which Almonte is entitled.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied, without prejudice to renewal solely with respect to that portion of the complaint that seeks to prevent the assignment of cases to ALJ Anyel in the future. Plaintiffs' motion for class certification is granted, as is their motion for judgment on the pleadings regarding Almonte's individual claim for benefits for the period beginning January 25, 1988. Defendant's motion to remand Almonte's claim is granted with respect to the period prior to January 25, 1988, and is otherwise denied. The parties are directed to file a status letter with the Court on or before February 28, 1992.

Settle order on notice.