Carol **LONGSHORE**, Plaintiff,

v.

Shirley S. **CHATER**, Commissioner of Social Security, Defendant.

No. 94 Civ. 2295.

United States District Court, S.D. New York.

July 26, 1996.

Carol S. Goldstein, Monroe, New York, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York by Linda A. Riffkin, Assistant United States Attorney, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Carol Longshore ("Longshore") brings this action pursuant to § 205(g) of the Social Security Act as amended (the "Act"), 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security (the "Commissioner")[1] that Longshore is not entitled to disability insurance benefits under the Act. Longshore and the Commissioner have cross-moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons discussed below, the Commissioner's determination denying benefits is affirmed.

## BACKGROUND

### A. Prior Proceedings

Longshore filed an application for disability insurance benefits on February 24, 1992. (Tr. 72–82).[2] The application was denied ini-

---

**1.** As of March 31, 1995, Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as defendant in this action. *See* Pub.L. No. 103–296, § 108(e)(5).

**2.** "Tr." refers to the transcript of the administrative record filed by the Commissioner as part of her answer.

In his decision dated August 16, 1993, the ALJ incorrectly identified the date of filing as April 29, 1992. (Tr. 13).

In addition to the current application, Longshore has filed two previous applications for dis-

tially and upon reconsideration. (Tr. 83–86). Longshore initially requested a hearing before an Administrative Law Judge but later waived her right to appear in person at a hearing. (Tr. 24–26, 158). On August 16, 1993, Administrative Law Judge Edwin Satter, III (the "ALJ"), considered the case *de novo* and issued a decision holding that Longshore was not disabled within the meaning of the Act and therefore was not entitled to disability benefits. (Tr. 13–19). This decision became the Commissioner's final decision when the Appeals Council denied Longshore's request for review. (Tr. 4–5). Longshore then commenced this action seeking a reversal of the Commissioner's decision or a remand for a hearing before an ALJ.

### B. *Facts*

Longshore was born on October 25, 1953 and is a high school graduate. (Tr. 72, 141). She is separated from her second husband and has two children. (Tr. 74). From 1971 until 1990, Longshore worked sporadically as a real estate title searcher in the title insurance industry. (Tr. 119, 141).

Longshore alleges that she has been disabled by degenerative disc disease and gastritis since April 12, 1990.[3] (Tr. 72). This condition purportedly has affected her ability to function in several respects. Although she did not testify at a hearing, in conjunction with her current application for disability Longshore submitted statements regarding her ability to perform daily living tasks to the Social Security Administration. (Tr. 89, 137–44, 150–58, 302). Longshore contends that she is unable to bend, sit or stand without experiencing pain and numbness and that she is most comfortable laying down. (Tr. 89, 137). Also, her children do the

housework, including cooking. (Tr. 140, 152, 156). While Longshore is able to drive short distances, she can no longer bowl or attend Bible study. (Tr. 140, 152, 302). She acknowledges that her injury does not prevent her from caring for her personal needs. (Tr. 152, 302).

### C. *Medical Evidence*

In 1985, Longshore underwent surgery for a ruptured lumbar disc at the L5–S1 region. (Tr. 162, 211). After a car accident in 1989, Longshore was treated for back injuries by Dr. Sieber, an orthopedic surgeon. (*Id.*). Dr. Sieber recommended an L4–5 suction discectomy; however, Longshore opted not to have the surgery and returned to work on a reduced schedule. (Tr. 149, 159). Her medical condition caused her to take sick leave from work from October 31, 1989 until December 6, 1989 and to cease working permanently on April 11, 1990. (Tr. 149).

On April 4, 1990, Longshore began treatment with Dr. Waden Emery III, a neurologist. (Tr. 211). On her initial visit, Longshore complained of lower back pain with radiation into the right buttock, lateral thigh and right foot. (*Id.*). Dr. Emery took X-rays and an MRI scan of Longshore's spine and an electromyogram of her lower extremities. (*Id.*). He diagnosed Longshore as having a herniated disc at the L4–5 region and L5 radiculopathy and referred her to Dr. Gieseke for a neurosurgical evaluation. (Tr. 212). In June 1990, Longshore was scheduled for surgery with Dr. Gieseke, but later changed her mind and requested physical therapy instead. (*Id.*). Dr. Emery continued to treat Longshore on a regular basis, seeing her at least 19 times from June 1990 through February 1993 for pain in her lower

ability insurance benefits. The first application (the "1982 application"), based on a claim for rheumatoid arthritis and mental instability, was denied on June 2, 1982. (Tr. 33–38). The record contains no further documentation on this application. Her second application (the "1990 application"), based on a claim for back injuries, was denied initially and on reconsideration. (Tr. 62–63, 66–67). On October 3, 1991, a request for a hearing was dismissed as untimely. (Tr. 68–71). As Longshore did not exhaust her administrative remedies these decisions are not ripe for judicial review. *See* 42 U.S.C. § 405(g);

*Kendrick v. Sullivan,* 784 F.Supp. 94, 99–100 (S.D.N.Y.1992).

3. Although Longshore alleges that the correct disability onset date should be October 31, 1989 (Pl.Mem. at 19), her disability date has been determined to be April 12, 1990. (Tr. 149). On her current application for disability benefits, Longshore herself indicated April 12, 1990 as the date she became unable to work due to her disabling condition. (Tr. 72).

back and groin and numbness. (Tr. 212–14). During this time, Longshore followed a conservative regimen of physical therapy and medications including Vicodin, Soma, and Xanax. (Tr. 212–14, 217–19).

On April 14, 1992, Longshore was evaluated by Patty Davenport, a physical therapist, who detected tenderness in the lumbosacral region but noted that Longshore's range of motion was within normal limits. (Tr. 303). Davenport prescribed therapy and a home exercise regimen. (*Id.*). The following day, at the request of the Office of Disability Determinations, Longshore was seen by Dr. Joel Rapchik for a consultative examination. (Tr. 305–306). Dr. Rapchik noted a full range of motion with minimal related abnormalities, normal ambulation, tone and strength with the exception of a slightly reduced right Achilles reflex and no evidence of paravertebral muscle spasms. (*Id.*). On April 20, 1992, in a report for the Florida Department of Health and Rehabilitative Services disability determination, Dr. Emery noted Longshore had an independent and normal tandem gait. (Tr. 218).

Longshore saw Dr. Emery on June 10, 1992, following another car accident, at which time he concluded that while the incident exacerbated her back pain, his objective examination of her was unchanged. (Tr. 214, 217). An MRI of her lumbar spine, performed two weeks later, was consistent with the earlier finding of a herniated disc and also found lipping of the disc material producing mild spinal stenosis. (Tr. 214). An electromyogram, performed the same day, repeated the earlier finding of L5 radiculopathy. (*Id.*).

On February 25, 1993, Dr. Emery completed a physical capacities evaluation of Longshore at the request of her non-attorney representative Russell Disparti. (Tr. 214–16). He determined that Longshore was able to sit for one hour at a time for six or more hours during an eight-hour day and walk or stand less than an hour at a time for two or more hours during an entire eight-hour day. (Tr. 215). His report noted that Longshore is able to lift or carry up to nine pounds and is unable to use her hands for pushing or pulling. (Tr. 215–16).

Based on his evaluations, Dr. Emery concluded that Longshore has the capacity to be gainfully employed given the following work restrictions: no heavy lifting, no repetitive lifting of over ten pounds, and no bending, stooping, squatting, or straining. (Tr. 214).

## DISCUSSION

### A. *Determining Disability*

A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary has promulgated regulations establishing a five-step procedure for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit summarized this procedure as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is un-

able to perform substantial gainful activity. Assuming the claimant does not have a listed impairment the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982); see also Bowen v. Yuckert, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proof as to the last step. See Berry, 675 F.2d at 467.

■ In making a determination regarding a claimant's ability to engage in substantial gainful activity, the Commissioner considers four categories of evidence: objective medical facts and clinical findings; diagnoses and medical opinions of qualified physicians; subjective evidence of pain and disability; and the claimant's age, education, and work history. See Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir.1980).

## B. Scope of Review

■ The standard of review in evaluating disability claims is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); see also Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir.1983). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). Also, the Commissioner's failure to apply proper legal standards or to provide a full and fair hearing are grounds

for judicial review. See Berry, 675 .F.2d at 467.

■ Thus, the Commissioner's decision is afforded considerable deference; the reviewing court should not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir.1991) (quoting Valente v. Secretary of Health & Human Serv., 733 F.2d 1037, 1041 (2d Cir.1984)).

## C. The Commissioner's Determination

ALJ Satter methodically proceeded through each of the five steps enunciated in Berry. (Tr. 17–18). Ultimately, the ALJ concluded that although Longshore could not return to her past work as a real estate title searcher, she had the residual functional capacity to perform a full range of sedentary work [4] reduced by specific limitations.[5] (Tr. 18). Based on this finding and Longshore's age, education, and work experience, regulations promulgated by the Secretary directed a conclusion that Longshore was not disabled within the meaning of the Act. (Tr. 17 (citing 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.28)).

Longshore raises three principal arguments in support of her claim that the ALJ's decision should be reversed: (1) the decision is not supported by substantial evidence; (2) the ALJ erred by not reopening the 1990 application; and (3) Longshore should have an opportunity to testify before an ALJ because she did not knowingly waive her right to a hearing.

### 1. Substantial Evidence

■ Upon review of the record, I hold that the ALJ's determination that Longshore is not disabled is supported by substantial evidence. First, substantial evidence supports the ALJ's finding that Longshore does not have an impairment listed in 20 C.F.R. Part

---

4. Sedentary work involves lifting no more than 10 pounds at a time or carrying articles such as docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing necessary in carrying out one's duties is permissible. 20 C.F.R. § 404.1567(a).

5. The ALJ listed the following limitations on Longshore's work capacity: lifting objects over ten pounds, pushing and pulling, using the feet for repetitive movements, and working around unprotected heights.

404, Subpt. P, App. 1 (the "Listing of Impairments"). The relevant listing, 1.05(C) of the Listing of Impairments, pertains to disorders of the spine and provides:

> Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> > 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> > 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Longshore claims she experiences pain and was found to have mild spinal stenosis and radiculopathy. (Tr. 214). In addition, Dr. Emery's report indicates that Longshore does have a herniated disc at the L4–5 region and thus the ALJ erred in finding that Longshore did not have a herniated disc. (Tr. 17, 212). The presence of a herniated disc, however, would not affect the ALJ's determination that Longshore's impairment is not listed, as she still fails to meet the requirements of significant limitation of motion in the spine, muscle weakness, and spasms or motor and sensory loss. (Tr. 218, 303, 306).

Second, while the record supports the conclusion that Longshore suffers from an impairment that prevents her from engaging in basic work activity, it also provides ample support for the ALJ's finding that Longshore is capable of performing sedentary work. Most significantly, Longshore's treating physician, Dr. Emery, who has monitored her progress since April 1990, reversed his 1990 opinion that Longshore was disabled and now believes she is "able to be gainfully employed." (Tr. 214, 228). The limitations on Longshore's ability to work specified by Dr. Emery were incorporated into the ALJ's opinion. (Tr. 18, 214). These restrictions do not render Longshore unable to perform sedentary work as defined by the Social Security regulations. *See* 20 C.F.R. § 404.1567(a).

As the treating physician, Dr. Emery's opinion is accorded controlling weight so long as it is well-supported by medical evidence and is not inconsistent with substantial other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993). Here, Longshore has been unable to provide a single medical opinion that she is in fact disabled and thus the record contains no evidence that contradicts Dr. Emery's position. The consulting physician, Dr. Joel Rapchik, did not render an opinion on Longshore's ability to work but found that she had full range of motion and minimal related abnormalities. (Tr. 306).

In addition, the ALJ considered Longshore's claims of debilitating pain and inability to sit, stand, walk, or lift and found them not to be credible. (Tr. 16). It is beyond dispute that an ALJ need not blindly accept a claimant's subjective claims of pain; rather, he "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of [a claimant's] pain." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *see also Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984). Here, substantial medical findings and other evidence support the ALJ's credibility determination.

Despite Longshore's claims, both Dr. Rapchik and Patty Davenport, a physical therapist, found that Longshore had a range of motion within normal limits. (Tr. 303, 306). Her treating physician, Dr. Emery, opined that Longshore was capable of sitting for six or more hours and standing or walking for two hours during an eight-hour day. (Tr. 215). Finally, Longshore admits that she is able to drive a car and care for her personal needs. (Tr. 302). While Longshore may experience pain, "disability requires more than mere inability to work without pain." *Dumas,* 712 F.2d at 1552.

Accordingly, the decision of the ALJ that Longshore has the residual functional capacity to perform sedentary work subject to restrictions is supported by substantial evidence.

### 2. *Reopening the 1990 Decision*

In his August 16, 1993 opinion, the ALJ also held that Longshore failed to show

good cause for reopening the 1990 application for benefits. (Tr. 13). Longshore claims this decision constituted legal error and thus this Court should reverse the ALJ's decision. Under the Act, however, district courts lack jurisdiction to review a Commissioner's final decision not to reopen a claim of benefits unless plaintiff presents a constitutional challenge. *Califano v. Sanders,* 430 U.S. 99, 107–09, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977). Here, because Longshore does not assert a constitutional basis for her claim, I lack jurisdiction to review the ALJ's decision.

### 3. *Waiver of Right to Appear at Hearing*

■ Longshore claims that the decision of the ALJ should be overturned and the case remanded because she did not have the opportunity to appear in person at a hearing. (Pl.Mem. at 19–20). Longshore missed this opportunity because she waived her right to appear at a hearing. (Tr. 158). She claims she did this unknowingly, upon the advice of her non-attorney representative. (Pl.Mem. at 16–17).

■ The Act does not create entitlement to counsel; rather the "right to representation ... refers to a claimant's freedom to choose to be represented by counsel in a benefits proceeding." *Frank v. Chater,* 924 F.Supp. 416, 422 (E.D.N.Y.1996). Longshore has not alleged that her representative failed to meet the qualifications outlined by the Social Security regulations or acted beyond the scope of his authority. *See* 20 C.F.R. §§ 404.1705, 404.1710.

■ More importantly, "[u]nder general contract principles a party is bound by the provisions ... he signs, unless he can show special circumstances that would relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987). Indeed, as long as a party has signed a writing, he is presumed to have read and understood it. *Janover v. Bernan Foods, Inc.,* 901 F.Supp. 695, 701 n. 4 (S.D.N.Y.1995). Thus, Longshore's contention that she did not read the waiver is without merit, and as she has not made a showing of special circumstances entitling her to relief, she is bound by the waiver she signed.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted. The final determination of the Commissioner is affirmed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.