**Anne M. PRONTI, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

**Charmarie Silliman, Plaintiff,**

v.

**Jo Anne Barnhart, Commissioner of Social Security, Defendant.**

**Richard Joslyn, Plaintiff,**

v.

**Jo Anne Barnhart, Commissioner of Social Security, Defendant.**

**Curtis I. Ballard, Plaintiff,**

v.

**Jo Anne Barnhart, Commissioner of Social Security, Defendant.**

**Raymond Perry, Plaintiff,**

v.

**Jo Anne Barnhart, Commissioner of Social Security, Defendant.**

**No. 02–CV–6309L, 02–CV–6406L, 02–CV–6646L, 03–CV–6090L, 03–CV–6170L.**

United States District Court, W.D. New York.

Sept. 13, 2004.

David E. Ralph, Elmira, NY, William J. McDonald, Jr., Geneva, NY, for Plaintiff.

Brian M. McCarthy, Christopher V. Taffe, Rochester, NY, for Defendant.

*DECISION AND ORDER*

LARIMER, District Judge.

## I. INTRODUCTION

These five actions, *Pronti v. Barnhart*, 02–CV–6309L ("*Pronti*"), *Silliman v. Barnhart*, 02–CV–6406L ("*Silliman*"), *Joslyn v. Barnhart*, 02–CV–6646L ("*Joslyn*"), *Ballard v. Barnhart*, 03–CV–6090L ("*Ballard*"), and *Perry v. Barnhart*, 03–CV–6170L ("*Perry*"), were commenced pursuant to, *inter alia*, 42 U.S.C. § 405(g) to review the final determinations of the Commissioner of Social Security ("the Commissioner") that plaintiffs are not disabled under the Social Security Act ("the Act") and therefore are not entitled to Title II Social Security Disability Insurance or Title XVI Supplemental Security Income benefits. Plaintiffs allege that the Commissioner's decisions are not supported by substantial evidence and are based on legal errors committed by the Administrative Law Judge ("ALJ"). In addition, plaintiffs in all five cases allege that the ALJ who decided their cases, Franklin T. Russell, holds a "general" bias against all Social Security claimants. As a result of ALJ Russell's alleged bias, plaintiffs claim that the Commissioner violated their rights to a fair hearing before an impartial ALJ.

Plaintiffs in four of the cases, *Perry, Joslyn, Silliman,* and *Ballard,* have moved for judgment on the pleadings and seek a remand to the Social Security Administration ("the SSA"), either for the immediate calculation and payment of benefits or for further administrative proceedings. In two of these cases, *Perry* and *Joslyn,* plaintiffs also seek an order assigning the case to a different ALJ on remand.

In both *Perry* and *Joslyn,* the Commissioner concedes that ALJ Russell committed legal errors and agrees that a remand for further administrative proceedings is appropriate. The Commissioner, though, opposes remand to a different ALJ.

In *Silliman* and *Ballard,* plaintiffs seek a reversal of the Commissioner's decision denying benefits and a remand solely for calculation and payment of benefits. No request is made for assignment to a different ALJ. The Commissioner opposes the motions for remand and urges affirmance

of the Commissioner's decisions denying benefits in both *Silliman* and *Ballard.*

In the fifth case, *Pronti,* the Commissioner has moved for a remand and agrees that on remand the case should be assigned to a different ALJ.[1]

The principal issues common to all five cases are the alleged general bias of ALJ Russell and the ability of this Court to adjudicate that issue in the district court. To be sure, there are factual issues concerning entitlement to benefits that are unique to each individual case, but because there are significant common questions of law and fact in these cases, I consolidate them for purposes of deciding the pending motions. FED. R. CIV. P. 42.

Based on the record and concessions made by the Commissioner, I believe that three of the cases, *Perry, Joslyn,* and *Silliman,* must be remanded pursuant to sentence four of § 405(g). Although plaintiffs seek remand for immediate calculation and payment of benefits, I find that in these three cases further administrative proceedings regarding their claims of disability are necessary.

Given the legal errors committed by the ALJ in these cases, as well as the serious nature of the allegations concerning the issue of ALJ Russell's bias, which will be discussed here in detail, I direct the Commissioner to assign these three cases to a different ALJ on remand. The SSA is currently investigating claims of ALJ Russell's alleged bias, and the record shows that plaintiffs' attorney in these three cases, William McDonald, was interviewed as part of the investigation. (*Perry,* August 26, 2004 McDonald letter to Court). It very well may be that these three cases were part of the bias review. As a result,

it is necessary that *Perry, Joslyn,* and *Silliman* be remanded to a different ALJ. *See, e.g., Sutherland v. Barnhart,* 322 F.Supp.2d 282, 291–92 (E.D.N.Y.2004); *Hartnett v. Apfel,* 21 F.Supp.2d 217, 222–23 (E.D.N.Y.1998); *see also Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir.1996); *Ventura v. Shalala,* 55 F.3d 900, 904 (3d Cir.1995); *Kolodnay v. Schweiker,* 680 F.2d 878, 879–80 (2d Cir.1982).

For reasons discussed *infra, Pronti* and *Ballard* are remanded to the Commissioner pursuant to sentence six of § 405(g) to take additional evidence regarding plaintiffs' claims of general bias of ALJ Russell.

## II. REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

### A. Standards of Review

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B). To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462

---

1. In spite of the Commissioner's concession that a remand to a different ALJ is appropriate, counsel for *Pronti opposes* that relief and urges this Court to retain the case and decide the bias claim against ALJ Russell in the first instance.

(1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).[2]

 The first task in these cases is to examine the merits of the Commissioner's decision regarding disability. The Commissioner's decision must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002). A reviewing court also must independently determine if the Commissioner applied the correct legal standards in finding that plaintiff was not disabled. *Townley v. Heckler*, 748 F.2d 109, 113 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. In this regard, the Court should first review the legal standards applied and then, if the standards were applied correctly, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).

Here, this task is made easier, to some degree, because the Commissioner agrees that in *Perry* and *Joslyn* legal errors were committed by the ALJ requiring further administrative proceedings. I agree with the Commissioner's assessment in those two cases; I also find that legal errors occurred in *Silliman* that require reversal and remand.

## B. *Perry v. Barnhart*

 On November 28, 2001, ALJ Russell issued a decision determining that plaintiff was not disabled. At step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to do light work. He also found that plaintiff could return to his past relevant work as a conveyor systems builder. (T. 20).[3]

The Commissioner concedes that the ALJ failed to consider the opinions of two of plaintiff's treating physicians, Dr. Aleksander Rupik and Dr. Nche Zama, in accordance with the regulations, and failed to discuss the weight he gave to those opinions. Both Dr. Zama and Dr. Rupik gave opinions regarding plaintiff's RFC that were inconsistent with the ALJ's determination that plaintiff could perform light work.

The Commissioner, therefore, moves to remand the case to properly consider the opinions of plaintiff's treating physicians. I agree that the case should be remanded for this reason, and that the ALJ should make the appropriate findings in accordance with the Commissioner's regulations. *See* 20 C.F.R. § 404.1527(d)(2).

 I also find that ALJ Russell made other errors in his analysis and that these

---

**2.** The Second Circuit has described the five-step process as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commis-

sioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

**3.** "T. ___" refers to the page of the administrative transcript filed by the Commissioner in each respective case.

errors must be addressed on remand. I agree with plaintiff that the ALJ's determination that plaintiff could perform his past relevant work is not supported by substantial evidence and is based on an erroneous RFC analysis that is not supported by any medical opinion of record. The ALJ concluded that plaintiff could stand and/or walk for eight hours in a workday. However, no medical opinion in the record states that plaintiff can stand or walk for all eight hours of a workday. The ALJ even ignored the opinion of the Commissioner's consultative examiner, Dr. Wesley Canfield, regarding plaintiff's heart condition (severe triple vessel coronary artery disease and status post two triple bypass surgeries), and did not explain why he did so.

I also find that the ALJ mischaracterized the plaintiff's testimony regarding the nature of his past relevant work as he actually performed that job. The ALJ concluded that "[a]s described by him in his testimony, his 'past relevant work' as a builder of conveyor systems required standing/walking for about 8 hours in an 8–hour workday.'" However, plaintiff never testified to those facts, either at the hearing or in his written work-related questionnaire. (T. 47–48, 125). In fact, at the hearing, the ALJ asked plaintiff only two questions about what this job entailed and whether plaintiff had received training for it, but no testimony was elicited or provided regarding the physical exertional requirements of the job. (T. 47–48). In addition, in his work-related questionnaire, plaintiff states only that this job entailed seven hours of sitting and one hour of walking. (T. 125). Thus, on remand, if the ALJ finds that plaintiff has the capacity to perform the exertional requirements of this job, there needs to be more development of the record regarding the physical requirements of that work.

■ Finally, on remand, the ALJ needs to consider the evidence in the record regarding plaintiff's alleged mental retardation. Joel Schorr, Ed.P., provided a psychological assessment of plaintiff's mental abilities. His tests determined that plaintiff was in the mildly mentally retarded range of intellectual functioning. (T. 447). The ALJ failed even to make mention of this assessment, or to consider how any mental impairments may affect plaintiff's ability to perform work-related activities.

Plaintiff argues that he meets the listing requirement for mental retardation, and that on this basis alone, the Court can remand for benefits only. I disagree. That inquiry needs to be determined first by the Commissioner on remand. In this regard, should the Commissioner determine that plaintiff does not meet the listing for mental retardation, she should consider how any such mental impairment could affect plaintiff's RFC or ability to perform any other work. That may require the testimony of a vocational expert regarding the effect that any nonexertional mental impairment may have on plaintiff's ability to perform basic work activities.

## C. *Joslyn v. Barnhart*

Plaintiff Joslyn applied for disability insurance benefits under Title II of the Act on January 3, 1978, alleging disability onset of September 1, 1977. (T. 100–103). This application was denied on May 18, 1978. (T. 104). Based upon that application, in 1995, plaintiff was identified as a member of the class action in *Dixon v. Sullivan*, 792 F.Supp. 942 (S.D.N.Y.1992), aff'd, 54 F.3d 1019 (2d Cir.1995). (T. 139). Plaintiff's claim for benefits was readjudicated and denied again on June 8, 2000. (T. 143). Plaintiff requested a hearing, which was held before ALJ Tyminski, who determined that plaintiff was not a *Dixon* class member. (T. 44–45). The Appeals

Council vacated this decision on February 8, 2002, and remanded the case for another hearing before an ALJ. At a second hearing held before ALJ Russell on September 18, 2002, ALJ Russell concluded that plaintiff was a member of the *Dixon* class. (T. 70). Following that hearing, ALJ Russell decided that plaintiff was not entitled to disability insurance benefits. (T. 14–19).

■ ALJ Russell denied benefits at step two of the analysis, finding that plaintiff did not establish that he had a "severe impairment" that lasted or could be expected to last twelve months. The Commissioner concedes that the ALJ failed to properly evaluate the severity of plaintiff's impairment or to make the requisite findings to deny benefits at step two. Specifically, the ALJ did not find that plaintiff had sufficient restoration of function such that there would be no significant limitation in his ability to perform basic work activities, which is required if disability is denied at step two. The Commissioner also agrees that the ALJ failed to properly consider the medical opinion of consulting examiner, Dr. Franziska Racker.

I agree with the Commissioner that, based on this record, a remand is required. The ALJ's decision denying benefits at step two is not well supported. The Court cannot discern from the ALJ's decision what the precise reasoning was for the step-two denial.

■ "[A] finding of 'not disabled' is made at this step when medical evidence establishes *only a slight abnormality* ... which would have no more than a minimal effect on an individual's ability to work ...." Social Security Ruling 85–28, 1985 WL 56856, *3 (S.S.A.) (emphasis supplied); *see also Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1029 (2d Cir.1995) (step two of disability review process should be applied "solely to screen out *de minimis* claims."). In addition, disability will be denied at step two where the impairment did not last or could not be expected to last twelve months—the so-called duration requirement. 20 C.F.R. § 404.1509.

The record here shows that plaintiff was admitted to the hospital in 1977 for severe back pain, and that he was unable to sit, stand, or lie down with any degree of comfort at that time. He was diagnosed with a protrusion of the intervertebral disc, and discharged nineteen days later. (T. 117–19). He received various treatments in 1978 and 1979 for back pain and eventually underwent a lumbar laminectomy in February 1980. (T. 58, 311, 320–21). Based on this evidence, it does not seem likely that ALJ Russell could conclude that plaintiff's impairment was *de minimis* or had only a slight effect on his ability to perform basic work activities during this time period. Yet, ALJ Russell's decision is silent as to the onset date of disability and he makes no finding that there was sufficient restoration of function within twelve months of onset, thereby implying that the duration requirement was met. *See* Social Security Ruling 82–52, 1982 WL 31376, *3 (S.S.A.) ("All cases denied on the basis of insufficient duration must state clearly in the denial rationale that ... within twelve months of onset, there was or is expected to be sufficient restoration of function ...."). Therefore, the case must be remanded so that the Commissioner can reevaluate the severity of plaintiff's impairment at step two, and, if appropriate, continue through the five-step disability analysis.

Plaintiff argues that a remand solely for the calculation of benefits is the only appropriate remedy. This case was part of the *Dixon* class action and the period at issue is plaintiff's disability from September 1977, through June 1982. Plaintiff

argues that further administrative proceedings would be useless because the record has been fully developed for this period, and a finding of disability is the only possible conclusion based on the evidence.

■ I disagree with plaintiff that the record is so clear as to the severity of his disability that a remand for the calculation and award of benefits is appropriate. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980). Here, a remand for further proceedings and another hearing is warranted because the ALJ's analysis ended at step two of the five-step disability review process. The opinions of record regarding plaintiff's back impairment do not necessarily preclude all work activity at any exertional level, although they do support a finding that plaintiff could not return to his past relevant work as a truck driver. A determination, therefore, may need to be made at step five that plaintiff could perform other work in the national economy, and this may require vocational testimony.

■ Because the case is being remanded for further proceedings, the Court notes other errors in ALJ Russell's analysis that should not be repeated. I agree with plaintiff that the ALJ's credibility analysis is flawed. ALJ Russell found that plaintiff's testimony regarding the nature of his impairments was inconsistent and therefore unworthy of belief. However, the ALJ grossly mischaracterized plaintiff's testimony. For instance, ALJ Russell found that plaintiff's testimony that he could neither sit nor stand longer than fifteen minutes without changing position was not credible because plaintiff successfully completed a five to six hour GED test at some point during the relevant time period. However, plaintiff testified that the exam consisted of several categories that were tested in one-hour intervals, each of which he completed in about fifteen minutes. (T. 92). That testimony is not inconsistent with his testimony that he could not sit or stand longer than ten or fifteen minutes without needing to switch positions. ALJ Russell also found that plaintiff's testimony that he drove less before his back surgery than after surgery somehow undermined his testimony that he had to change positions frequently. ALJ Russell stated, "One wonders how claimant could drive at all considering he needed to alternate sitting and standing every 10–15 minutes, and then lie down." (T. 18). However, plaintiff never testified as to the frequency and duration of his driving during this time. It was legal error for the ALJ to discount plaintiff's credibility entirely on this fact.

### D. *Silliman v. Barnhart*

Plaintiff Silliman applied for disability insurance benefits on September 6, 1995, alleging a disability onset of August 15, 1990. Her application was denied initially and on reconsideration. (T. 198, 213). On January 25, 1999, after two hearings, ALJ Russell issued a decision finding that plaintiff was not disabled. At step four, the ALJ found that plaintiff retained the RFC to do light work with certain limitations. (T. 101). Based on vocational expert testimony, ALJ Russell found at step five that plaintiff was not disabled because she could perform other work in the national economy, specifically as an "information clerk" and a "surveillance system monitor." (T. 102). As discussed below, this decision must be reversed and remanded for further administrative proceedings because it is not supported by substantial evidence and is based on legal error.

#### 1. RFC Assessment

■ The RFC determination is flawed because the ALJ failed to cite to any medi-

cal evidence from the record to support his specific findings. The ALJ concluded that plaintiff had the RFC "to do light work, as that term is defined in the regulations, which does not involve pushing, pulling or overhead work, repetitive motions with the dominant left arm, or exposure to cold temperatures." (T. 101). It is well-settled that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96–8p, 1996 WL 374184, at *7 (S.S.A.); see also Balsamo v. Chater, 142 F.3d 75, 80–81 (2d Cir.1998). Here, however, the ALJ did not explain the basis of his detailed RFC finding.

 In addition, the ALJ's conclusory statement that plaintiff can perform "light work, as that term is defined in the regulations" is inadequate because the ALJ did not detail, on a function-by-function basis, plaintiff's specific exertional limitations. Id. at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.").

The Commissioner argues that the ALJ's RFC finding is supported by the opinion of plaintiff's treating physician, Dr. Carol Holobinko, and should be affirmed. I disagree. Dr. Holobinko provided two different statements about plaintiff's ability to perform work-related functions. In an undated RFC analysis,[4] Dr. Holobinko

states that plaintiff can occasionally lift twenty pounds, stand and/or walk up to six hours per day, sit up to six hours per day, and is limited in pushing and pulling with her upper extremities. (T. 495). However, in a subsequent statement dated October 1996, Dr. Holobinko states that plaintiff is limited to less than sedentary work because, among other limitations, plaintiff cannot lift more than five pounds and needs to change positions frequently (including alternating sitting and standing). (T. 504). Dr. Holobinko also stated that plaintiff could not perform fine hand movements on a repetitive basis but concluded that she could "type, file, roll, etc. but needs frequent breaks." (T. 504).

The ALJ gave "considerable weight" to the first of Dr. Holobinko's opinions because, according to the ALJ, it was consistent with "clinical findings and the claimant's reported daily activities." However, he gave "little weight" to the latter of Dr. Holobinko's opinions because he believed that it was based on the plaintiff's subjective complaints, rather than Dr. Holobinko's "examination findings." (T. 100). This was error.

 The Second Circuit has made clear that an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998). Rather, the ALJ has an affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, even if plaintiff is represented by counsel. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal, 134 F.3d at 505.

 This requirement is particularly important when the record contains con-

4. This assessment indicates that Dr. Holobinko last saw plaintiff in September 1995. Therefore, it is reasonable to conclude that the assessment was prepared sometime after this date.

flicting reports or opinions from a treating physician. *Clark,* 143 F.3d at 118; *Schaal,* 134 F.3d at 505; *see also Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999); *Hartnett,* 21 F.Supp.2d at 221. In such situations, the ALJ cannot pick and choose from the opinions of the treating physician in order to justify denying disability. *See Shaw v. Chater,* 221 F.3d 126, 135 (2d Cir.2000). Finally, the ALJ failed to cite medical evidence from the record that contradicted Dr. Holobinko's October 1996 opinion that would warrant the ALJ's failure to accord it controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

### 2. Vocational Testimony

In addition, the ALJ's determination at step five that plaintiff could perform other work in the national economy is based on the same flawed RFC assessment and, therefore, a remand is required. Plaintiff also contends that the Vocational Expert's ("VE") opinion is not supported by sufficient evidence. Plaintiff argues the VE's testimony is deficient because it was based on an improper hypothetical posed by the ALJ, did not take into consideration all of plaintiff's impairments (including pain), and did not include sufficient evidence regarding the incidence of such work in the regional or national economy.

■■■ On remand, the Commissioner must meet her burden that such work exists in significant numbers either in the region where plaintiff lives or in several

other regions of the country. 20 C.F.R. § 404.1566(a). Here, the VE's testimony regarding those matters and the methodology utilized were confusing and ambiguous. The ALJ failed to reconcile this testimony. Nor did he detail in his decision his findings regarding the incidence of jobs, stating only that "[i]t is the undersigned's opinion that these jobs exist in significant numbers in the regional and national economy." (T. 101). This finding is inadequate and, in light of the facts developed on cross-examination of the VE, is insufficient to meet the Commissioner's burden of proof. *See* Social Security Ruling 83–12, 1983 WL 31253, *5 (S.S.A.) ("Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include … a statement of the incidence of such work in the region in which the individual resides or in several regions of the country."); *see also Kuleszo v. Barnhart,* 232 F.Supp.2d 44, 53–56 (W.D.N.Y.2002) (reversing Commissioner's decision at step five where VE's testimony was not clear and required the ALJ to speculate as to the number of jobs available).[5]

### III. REMAND PURSUANT TO SENTENCE SIX OF 42 U.S.C. § 405(g) CONCERNING ALLEGATIONS OF GENERAL BIAS OF ALJ RUSSELL

It cannot be disputed that litigants seeking Social Security benefits are entitled to

---

**5.** The plaintiff, apparently now proceeding *pro se,* filed with the Court other medical records and argued that she has developed other medical problems. These records are not part of the certified transcript, and they postdate the Commissioner's final decision. The Court cannot consider these documents for the first time at this juncture. Because the Court is remanding the case for further administrative proceedings, the Commissioner is directed to determine whether these documents should be considered new evidence

material to the disability determination, such that they should be considered in the rehearing. *See* 20 C.F.R. §§ 404.977, 404.983. The Assistant United States Attorney assigned to this case is directed to take possession of these documents (which were sent by plaintiff and received by this Court on June 7, 2004) and transmit them to the appropriate authorities at the Social Security Administration for appropriate consideration consistent with this Decision and Order.

have a fair and impartial decision-maker. Indeed, a basic element of due process is the right to an impartial and unbiased adjudication of a claim. *Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) ("Trial before an unbiased judge is essential to due process."). "This aspect of due process applies equally in an administrative setting as it does in a judicial forum." *Kendrick v. Sullivan,* 784 F.Supp. 94, 102 (S.D.N.Y. 1992) (citing *Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982)); *see also Hummel v. Heckler,* 736 F.2d 91, 93 (3d Cir.1984) ("Indeed, the absence in the administrative process of procedural safeguards normally available in judicial proceedings has been recognized as a reason for even stricter application of the requirement that administrative adjudicators be impartial."). If, in fact, the ALJ holds a general bias against Social Security claimants, this strikes at the very core of due process.

■ The common issue in these five cases is the allegation that ALJ Russell has a general bias that has infected these five cases, and many others, and has therefore deprived claimants of a fair hearing. I did not directly address this issue in *Perry, Joslyn,* and *Silliman, supra,* except that I have directed that all three cases be assigned to a different ALJ on remand.

The issue of bias, therefore, is moot in these three cases. In addition, unlike in *Pronti* and *Ballard,* plaintiffs in *Perry, Joslyn,* and *Silliman* raised the bias issue only in the context of a § 405(g) review. No separate basis for jurisdiction was pleaded.

The allegations of bias are serious and need to be considered in the context of a justiciable case. *Pronti* and *Ballard* provide the vehicle for addressing these issues. The parties do not disagree that the issue is material; they do disagree in many respects, though, as to how, when and by whom that issue should be resolved.

## A. Allegations of Bias

The allegations of bias are serious indeed. These cases alleging bias appear to involve more than the filings of a disgruntled lawyer who failed to prevail. Rather, several attorneys in several different cases have made basically the same claim. All five cases in this decision, involving three separate attorneys, raise issues of ALJ Russell's alleged general bias. Furthermore, in support of the claims of bias, numerous affidavits and exhibits have been submitted. This material includes both statistical evidence and anecdotal evidence.

For instance, six affidavits were filed by attorneys who regularly appear before ALJ Russell. (*Pronti,* Dkts. ## 12, 18–22). In these affidavits, the attorneys detail their experiences practicing before ALJ Russell. As an example, Pronti's attorney, David Ralph, states that the first time he appeared before him, ALJ Russell announced a "private and personal policy agenda outside of the law and contrary to Congressional intent." According to Attorney Ralph, before any cases were heard on this day, ALJ Russell declared before counsel that too many claimants were awarded social security benefits and that he was going "to protect the public treasury." In this regard, ALJ Russell warned counsel that he was going to be very strict when deciding whether claimants were disabled and that only cases that were thoroughly proven would be approved. (*Pronti,* Dkt. # 12, Ralph Aff, ¶ 2).

Attorney Scott Learned also recounted an experience with ALJ Russell at a hearing with a VE in which ALJ Russell continued to examine the VE about jobs in the

national economy that the VE had not testified about. When Learned objected that the questioning went beyond the hypothetical questions posed, ALJ Russell responded that in his role as the "guardian of the Social Security Trust Fund" he could ask whatever questions he wanted. When Learned responded that his belief was that the ALJ was to weigh the evidence impartially, ALJ Russell attempted to minimize his previous remark by asserting that he "wore several hats." (*Pronti*, Dkt. # 19, ¶ 8).

Although each affidavit provides differing accounts of incidents with ALJ Russell,[6] there are common themes that emerge. All of the attorneys claim that ALJ Russell uses an illegal standard of proof for disability that is higher than a preponderance of the evidence,[7] fails to adhere to the remedial purposes of the Act, and constantly misapplies the law. The attorneys claim that ALJ Russell routinely misapplies the Treating Physician's Rule [8] and uses an illegal standard to determine credibility, often finding inconsistencies in claimant's testimony when none exist.[9] Several attorneys claim that ALJ Russell refuses to allow them to make objections on the record or to submit ex-

6. Attorney Amanda Vig claims that ALJ Russell consistently demands that information be added to a claimant's record that is not relevant to either the time period at issue or the issue of disability, does not allow her sufficient time to review record materials (including vocational experts' reports) prior to hearings at which the material is pertinent, fails to allow her sufficient time to confer with clients before hearings, and makes demeaning comments to her about her and her office in front of clients, including threatening to have her disbarred. (*Pronti*, Dkt. # 22).

Attorney Gregg Thomas claims that ALJ Russell improperly schedules unnecessary supplemental hearings in order to obtain testimony from a VE to create evidence so that he can deny benefits. At these supplemental hearings, ALJ Russell will adopt the VE's opinion that is consistent with a finding of not disabled, even if the VE has provided several opinions based on other hypothetical questions. (*Pronti*, Dkt. # 18).

Attorneys Ralph, Thomas, and Learned also allege that if a claimant has a case remanded after an appeal from ALJ Russell's decision denying benefits, and that same claimant filed a subsequent application for benefits during the pendency of that appeal which was granted, ALJ Russell will improperly reopen the subsequent favorable application and consolidate it with the remand, thereby leaving the entire disability determination for both applications in ALJ Russell's hands. Therefore, claimants risk losing their benefits that were awarded on the subsequent application if they continue to prosecute their first application on remand. In these circumstances, Attor-

neys Ralph, Thomas, and Learned advise their clients to drop the favorable determination on appeal rather than to risk losing the benefits granted on the subsequent application. (*Pronti*, Dkts. ## 12, 18, 19).

Attorney Learned further claims that, because he resides so close to the New York/Pennsylvania border, he often gets phone calls from Pennsylvania residents. He advises these claimants that, although it may be more convenient for them to apply for benefits in Elmira, they should file an application in Pennsylvania so as to avoid having a hearing before ALJ Russell. Learned does this even though he is not admitted to practice in Pennsylvania and cannot represent them if they follow his advice. (*Pronti*, Dkt. # 19).

7. Attorney Andrew Rothstein claims that ALJ Russell requires facts approaching proof beyond a reasonable doubt to determine disability. (*Pronti*, Dkt. # 21).

8. For instance, Attorney McDonald claims that ALJ Russell granted controlling weight to the opinion of a treating physician in only 12% of McDonald's cases whereas he granted controlling weight to state agency non-examining physician's opinions in 25% of his cases. He also argues that ALJ Russell is more likely to credit medical opinions that are unfavorable to a claimant.

9. According to Attorney McDonald, 82% of claimants in his cases were found to be not credible or not fully credible.

hibits. Others state that ALJ Russell often requests unnecessary evidence that falls outside the relevant time period or is not pertinent to the alleged impairment at issue. The attorneys also assert that ALJ Russell uses almost no standard of proof when there is even the slightest evidence of ability and will credit unfavorable evidence much more easily than favorable evidence. They also allege that ALJ Russell denies benefits in a significantly higher percentage of cases when compared to all other ALJs before whom they have appeared.

The attorneys also filed statistical evidence regarding the rates at which ALJ Russell grants and denies benefits as compared to other ALJs in this region and ALJs nationwide.[10] This evidence was gleaned from the SSA's response to Attorney Rothstein's Freedom of Information Act request and covers cases decided from 1995 through 2000. According to analyses completed by the attorneys, ALJ Russell denied 63.4% of cases assigned to him. ALJs nationwide deny 33.7% of cases. ALJs in this region denied 43% of cases. Moreover, when ALJ Russell does grant benefits, the result is often only partially favorable; that is, ALJ Russell will find that disability began (and that benefits should be awarded) on a much later onset date than alleged by a claimant.[11] (*Pronti,*

August 11, 2003 Ralph letter to Court, with attached exhibits).

It is notable that many of the legal errors that the attorneys claim ALJ Russell repeatedly commits are very the same errors this Court (and the Commissioner herself) agree occurred in the five cases at bar. The Court, however, makes no judgment on whether this evidence is sufficient to show that ALJ Russell holds a general bias against claimants. All this material suggests, at the very least, is that a complete and detailed investigation needs to occur.

**B. Procedural Issues: The Commissioner's Objections to Review of Bias Claims in District Court Pursuant to 42 U.S.C. § 405(g)**

The serious allegations of bias that have been made must be addressed. The Commissioner contends, in *Pronti,* that this review should not be in this Court. The Commissioner contends that this Court's jurisdiction is limited in Social Security cases to reviewing the administrative record to determine if the final decision of the Commissioner is supported by substantial evidence. *See* 42 U.S.C. § 405(g). The Commissioner also contends that plaintiffs' failure to raise the issue of general bias and exhaust administrative remedies precludes any review by this Court.

10. In addition, most of the attorneys combed through hundreds of their own cases and provided specific statistical evidence of the rates that ALJ Russell's cases are remanded or reversed. In Attorney Ralph's experience, of the cases that ALJ Russell denied claimants benefits after a hearing, two-thirds of those claimants later were granted benefits, either after remand by the Appeals Council or the District Court, or on a subsequent application. (*Pronti,* Dkt. # 12, Ralph Aff., ¶¶ 4–6). Attorney McDonald claims that ALJ Russell is more than twice as likely as all other ALJs to have his decisions be remanded, either by the

Appeal Council or the District Court. (*Pronti,* Dkt. # 20).

11. Nationwide, between 1995 and 2000, ALJs granted partially favorable decisions in 7.8% percent of cases where benefits were awarded. In Attorney Rothstein's experience, ALJ Russell granted partially favorable decisions in 40.7% of cases that he awarded benefits. (*Pronti,* Dkt. # 21, Ex. A.) Attorney McDonald claims that of all the cases in which ALJ Russell has actually found a claimant disabled, 68% were only partially favorable decisions. (*Pronti,* Dkt. # 20).

I agree that the record on the issue of bias is incomplete, not only in the district court, but also before the Commissioner. I do not believe, however, that this fact precludes this Court from taking steps to *develop* the record and ultimately consider the issue. Moreover, I do not believe that the plaintiffs' alleged failure to "exhaust" the issue of bias before the Commissioner defeats the jurisdiction of this Court under 42 U.S.C. § 405(g).

■ The failure-to-exhaust defense advanced by the Commissioner is not persuasive. The Commissioner suggests that there is an existing regulation, at 20 C.F.R. § 404.940, dealing with bias and that plaintiffs should be barred here because they failed to follow its procedures. I am not persuaded.

First of all, that provision requires that the issue of bias be raised at "the earliest opportunity." Plaintiff Ballard raised the bias issue first at the Appeals Council level, and plaintiff Pronti raised the issue of bias in the first instance in the district court. Given the evidence upon which the bias claim is based, I find that both plaintiffs Pronti and Ballard raised the issue of bias "at the earliest opportunity."

This evidence consists of (1) statistical data regarding the rates (nationally and locally) at which ALJs grant and deny benefits that was sent to plaintiff Ballard's counsel, Andrew Rothstein, by the SSA in response to a Freedom of Information Act request; and (2) six affidavits from attorneys who appear regularly before ALJ Russell that detail the allegations of ALJ Russell's general bias. This evidence was not available to plaintiff Pronti at the time of her November 2000 hearing before ALJ

Russell or when she made her May 2001 request for review by the Appeals Council.[12] Moreover, although plaintiff Ballard raised the issue of ALJ Russell's bias with the Appeals Council in his October 2002 request for review, the bias claim was based solely on Attorney Rothstein's own statistical sampling of 154 of his clients' cases. (T. 216–17). At that time, Rothstein did not have a response from the SSA to his FOIA request, nor could he have been aware of affidavits that were not yet filed in *Pronti*.

Second, based on the record before the Court, there are serious questions as to whether 20 C.F.R. § 404.940 is an adequate mechanism when the bias alleged does not relate to a particular plaintiff, but is based on a claim that the ALJ is generally biased against all Social Security claimants. The regulation contemplates circumstances where an ALJ has a specific bias against a particular plaintiff or has "any interest in the manner pending for decision" that would warrant his disqualification. 20 C.F.R. § 404.940. This is made clear by the requirement that a plaintiff who objects to a particular ALJ must notify the ALJ so that he can consider the specific objections and decide whether to recuse himself and withdraw from the case. If the ALJ chooses not to withdraw, the plaintiff may, after the hearing, present her objections to the ALJ to the Appeals Council "as reasons why the hearing decision should be revised or a new hearing held before another Administrative Law Judge." 20 C.F.R. § 404.940.

For many reasons, this regulation is not well-suited to claims of general bias. *See Small v. Sullivan*, 820 F.Supp. 1098, 1106

---

12. The SSA did not respond to Attorney Rothstien's FOIA request until July 2, 2003, almost a year after the request was made. (*See Pronti*, Exhibit A (SSA letter to Rothstein) annexed to August 11, 2003 Ralph letter to Court).

Further, the attorney affidavits were filed in *Pronti* in March 2003 and are dated between January and March of that same year, well after the administrative proceedings were concluded.

(S.D.Ill.1992); *Kendrick,* 784 F.Supp. at 100. First, it seems misguided to have to present a claim of general bias first to the very ALJ that is alleged to be biased. Assuming an ALJ was biased, it stands to reason that he would not admit as much by agreeing to withdraw from the case. Second, the Appeals Council reviews claims of bias on a case-by-case basis only, which does not take into account the nature of a claim of general bias.

This is precisely what occurred in *Ballard.* In response to the plaintiff's allegation that ALJ Russell was biased generally against claimants, the Appeals Council responded in its decision denying review of the case as follows:

> The Appeals Council also considered your representative's contention that the Administrative Law Judge has a bias in general against disability claimants because of the low percentage of favorable decisions he issues for your representative's clients. The Appeals Council considers each case which comes before it on an individual basis. The Council found no indication that the Administrative Law Judge adjudicated your claim on a basis other than his evaluation of the issues and evidence of record. Accordingly, the Appeals Council finds no support for your representative's contention that the Administrative Law Judge is biased.

(T. 6).

 The Courts in *Kendrick* and *Small* found § 404.940 to be an insufficient mechanism for handling claims of general bias because, *inter alia,* in order to prove

that claim, a plaintiff needs access to information not included in his or her own administrative record. Yet, there is no administrative mechanism to obtain pre-hearing discovery necessary to uncover such information. *See Kendrick,* 784 F.Supp. at 100; *Small,* 820 F.Supp. at 1106. I find this reasoning persuasive and believe that serious questions exist regarding whether § 404.940 is merely a futile remedy for a plaintiff seeking to raise a general bias claim, thereby vitiating any exhaustion requirement.[13]

Finally, the Supreme Court in *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), held that "issue exhaustion" was not required under either the Social Security Act or the Commissioner's regulations. Therefore, that plaintiff Ballard raised the bias issue first at the Appeals Council level and that plaintiff Pronti raised the issue of bias in the first instance in the district court does not preclude them from raising the issue now.

## C. Remand is the Proper Remedy to Develop Bias Claims Under 42 U.S.C..§ 405(g)

 Both plaintiffs in *Pronti* and *Ballard* allege that they were denied benefits because of errors made by ALJ Russell in analyzing the medical evidence *and* because Russell has a general bias that permeates his performance.

In both cases there are significant issues as to whether the ALJ's decision denying benefits is supported by substantial evidence. In *Pronti,* the Commissioner con-

---

**13.** I am cognizant that in two other cases from this District, *Hopper v. Barnhart,* 02–CV–6387(CJS) (W.D.N.Y. Aug. 11, 2003) and *Sanborn v. Barnhart,* 02–CV–6339(CJS) (W.D.N.Y. Aug. 11, 2003), Judge Siragusa "s[aw] no reason why the regulation could not be used to raise a claim of systematic bias ...." Here, however, this Court is presented with a differ-

ent record. This Court has evidence before it of the ineffective manner in which the Appeals Council in *Ballard* considered plaintiff's claim of general bias, that is, on "an individual basis." It is unclear whether this same evidence was part of the record in *Hopper* and *Sanborn.*

cedes that the ALJ erred by ignoring the opinion of Dr. Robert Mauri, (one of Pronti's treating physicians), that Pronti could do less than a full range of sedentary work. (T. 234–37). The Commissioner also agrees that further proceedings are necessary because the ALJ's decision ended at step four, and no step five analysis was undertaken. There are also issues regarding plaintiff's past relevant work and whether plaintiff had any transferrable job skills. The Commissioner also acquiesces to a remand before a different ALJ.

In *Ballard*, plaintiff challenges the ALJ's determination at step five that he had the functional capacity to perform other work. The ALJ found that although plaintiff could not perform the full range of light work, he could perform "a significant range of light work." (T. 119). It is not clear upon what medical evidence the ALJ relied in making this determination. Further, plaintiff could not perform heavy or medium work, and a finding of sedentary work would mandate a finding of disability. 20 C.F.R. Pt. 404, Subpt. P.App. 2, Rule 201.09.

Although it appears that the record on the medical issues is adequate, in both cases, to determine if the ALJ's decision should be affirmed, reversed, or remanded for further proceedings, the record concerning bias has not been fully developed.

I recognize that the Court's role in cases brought pursuant to 42 U.S.C. § 405(g) is a limited one, and that the Court itself has no fact-finding role, in the first instance, to determine questions of disability or bias. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (the role of the Court is not to determine *de novo* whether claimant is entitled to benefits); *see also Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir.1993).

The Court, though, is not powerless to deal with a situation where the record needs amplification or where new evidence has been produced on a material issue. The remedy, often utilized in reviewing Social Security appeals, is to remand the case to the Commissioner to take additional evidence. I believe that is the proper remedy here. As discussed above, plaintiffs have shown "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in prior proceedings . . .", 42 U.S.C. § 405(g), namely, the six attorney affidavits and the statistical evidence regarding ALJ Russell's Social Security decisions. Therefore, these two cases, *Pronti* and *Ballard*, are remanded pursuant to the sixth sentence of 42 U.S.C. § 405(g) to the Commissioner to take additional evidence regarding the claim that reversal is required because of ALJ Russell's general bias.

Once the administrative record is fully developed and the Commissioner makes findings of fact and issues a decision regarding ALJ Russell's alleged bias, the Court will review the supplemented administrative record and the Commissioner's findings of fact and final decision to determine whether they are supported by substantial evidence. *See Grant*, 989 F.2d at 1346 (district court may review the findings of the Commissioner on the issue of an ALJ's general bias pursuant to the substantial evidence standard); *Grant v. Shalala*, 111 F.Supp.2d 556, 565–69 (M.D.Pa.2000) (finding that Commissioner's decision that an ALJ was not biased generally against Social Security claimants was not supported by substantial evidence and that the record compelled the conclusion that the ALJ "harbored biases which rendered him unable to fulfill his duty to develop the facts and to decide cases fairly.").

This sentence six remand should be facilitated somewhat because the Commis-

sioner has already commenced its own investigation into allegations of bias on the part of ALJ Russell. Since these five cases were filed, the SSA has undertaken a review of the complaints of ALJ Russell's general bias made by Pronti's Attorney Ralph and Perry's Attorney McDonald.

The SSA informed Attorneys Ralph and McDonald that it was conducting an investigation in accordance with its "Procedures Concerning Allegations of Bias or Misconduct by Administrative Law Judges," as set forth in 57 Fed.Reg. 49,186 (S.S.A. Oct. 30, 1992) (hereinafter referred to as the "Interim Procedures"). (*See Pronti*, Exhibit B to June 27, 2003 Ralph letter to the Court; *Pronti*, Exhibit A to August 5, 2003 Taffe letter to the Court). Hearing Office Chief Administrative Law Judge David Nisnewitz, of the Office of Hearings and Appeals in Queens, New York, was appointed to investigate the allegations of ALJ Russell's alleged bias. According to a recent submission from the Commissioner, that investigation included interviews of the two complaining attorneys, and interviews of attorneys and non-attorney representatives in the Coming area, the Hearing Office Chief Administrative Law Judge, the Hearing Office Director, and Hearing Office staff. ALJ Russell was also interviewed. ALJ Nisnewitz reviewed a random sample of 42 cases, including decisions and hearing tapes, as well as "many of the cases cited by attorneys as problematic." (*Pronti*, ALJ Nisnewitz memorandum attached to September 2, 2004 Taffe letter to Court). Attorney Ralph also informed the Court that he filed with ALJ Nisnewitz the six attorney affidavits filed in *Pronti* and at least some of the statistical information the SSA sent to Attorney Rothstein in response to his FOIA request. Ralph also states that ALJ Nisnewitz interviewed him and Attorney Rothstein together in an "informal, conversational meeting" that took place at a restaurant. No tape recording, formal record, or detailed notes were made of the interview. (*Pronti*, September 3, 2004 Ralph letter to Court).

It is important, though, to remind the Commissioner that a full record must be developed on this issue, as required in a sentence six remand. The second part of the sixth sentence of 42 U.S.C. § 405(g) provides that "the Commissioner . . . shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony, upon which the Commissioner's action . . . was based." This Court cannot now determine whether the proceedings before ALJ Nisnewitz provide an adequate record for review; that remains to be determined.

Evidence concerning bias that allegedly adversely affected an ALJ's decision should be treated no differently from medical issues needing further development on remand. A full and adequate record must be assembled for this Court to adequately review the issue when the cases are returned here.

Courts have recognized the importance of creating a proper record concerning allegations of bias. In *Grant*, a case that arose prior to the implementation of the Interim Procedures, the District Court ordered that, although the Commissioner had convened a "Special Panel" of the Appeals Council to review the claim of bias, the case needed to be remanded to the Commissioner so that plaintiffs could present their evidence of bias. The Court reasoned that "plaintiffs did not receive a full and fair administrative hearing by the Appeals Council. The Secretary's findings of fact from the hearing are defective because they were rendered in the absence of argument and evidence presented by Plaintiffs on their claims of general bias."

*Grant,* 111 F.Supp.2d at 558. A second Special Panel was then convened, new evidence submitted, including witness affidavits, and a hearing was held at which witnesses testified, including an attorney advisor who worked closely with the allegedly biased ALJ and one of his former opinion writers.

## IV. DUE PROCESS CAUSES OF ACTION

So far the issue of bias has been analyzed in the context of review under § 405(g). As discussed, jurisdiction of the district court is limited by that statute.

Plaintiffs Pronti and Ballard do not rest only on their claims under § 405(g). Each has pleaded separate causes of action alleging a Fifth Amendment due process violation. In addition to alleging jurisdiction under § 405(g), plaintiffs assert federal question jurisdiction pursuant to 28 U.S.C. § 1331 and mandamus jurisdiction pursuant to 28 U.S.C. § 1361. In addition, a request is made under the Declaratory Judgment Act, 28 U.S.C. § 2201–02. The thrust of these separately-pleaded causes of action is that plaintiffs were denied their constitutional right to due process that a fair and impartial ALJ decide their claims for Social Security benefits.

Thus, unlike plaintiffs in *Perry, Joslyn,* and *Silliman* who alleged the issue of bias solely as support for their requests for a different ALJ on remand, plaintiffs in *Pronti* and *Ballard* have filed claims asserting that their constitutional rights have been violated because of the alleged bias of ALJ Russell.[14]

The Court, therefore, is not constricted by § 405(h). The allegations of bias are significant enough that, if they are not addressed adequately by the Commissioner, this Court could proceed *de novo* to consider the bias issue in connection with the alternative causes of action that have been filed.

I do believe that it is better for the issue of bias to be aired first before the Commissioner. This is so, in part, because the Commissioner has already commenced a review pursuant to the Interim Procedures. Because of that, I have remanded *Pronti* and *Ballard* pursuant to sentence six of § 405(g). But, I have done so with some concern. The concern is that the Interim Procedures for investigating and hearing plaintiffs' claims of general bias may not provide a meaningful or adequate vehicle to demonstrate general bias. It cannot be overlooked that the Interim Procedures, initially passed in 1992, were supposed to be finalized within six months of their publication. Twelve years later, that has yet to occur. Therefore, the Social Security Administration still has no final regulation that applies to claims of general bias. Although I have opted to remand the issue of general bias to the Commissioner, I could have done otherwise.

Federal courts have exercised mandamus jurisdiction pursuant to 28 U.S.C. § 1361[15] over Social Security claims in certain circumstances where constitutional claims regarding procedures employed in administering Social Security benefits were collateral to the claim for benefits. *See Mathews v. Eldrigde,* 424 U.S. 319, 330–332, 96 S.Ct. 893, 47 L.Ed.2d 18

---

14. Likewise, plaintiffs in *Sanborn* and *Hopper,* discussed *supra,* at n. 13, raised the issue of ALJ Russell's bias solely in connection with their requests that a different ALJ be assigned on remand. No other claims or jurisdictional bases were pleaded.

15. 28 U.S.C. § 1361 provides that: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

(1976); *City of New York v. Heckler*, 742 F.2d 729, 739 (2d Cir.1984); *Dietsch v. Schweiker*, 700 F.2d 865 (2d Cir.1983) (citing *Ellis v. Blum*, 643 F.2d 68, 78 (2d Cir.1981)) (The writ of mandamus "provides jurisdiction to review otherwise unreviewable procedural issues not related to the merits of a claim for benefits."). Section 1361 is designed to "provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).

Therefore, despite the limitations of 42 U.S.C. §§ 405(g) and (h), plaintiffs may be entitled to relief pursuant to § 1361 "under circumstances where the writ would properly issue." *City of New York v. Heckler*, 742 F.2d at 739. The prerequisites for issuance of a writ of mandamus are " '(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defen-

dant to do the act in question; and (3) no other adequate remedy available.' " *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir.1989) (quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir.1972)).

The Court need not determine at this time whether mandamus or other jurisdiction lies in this case.[16] This case is being remanded and, assuming due diligence before the Commissioner, I am content to allow the record to be developed there. But, it should be clear that plaintiffs may be entitled to have their due process claims heard in the district court directly, especially if the Commissioner is unable or unwilling to conduct a full and fair review of these most serious issues relating to bias.

## V. PLAINTIFF PRONTI'S CROSS-MOTION FOR DISCOVERY

 Plaintiff Pronti's cross-motion for discovery (*Pronti* Dkt. # 12) is denied at this time. Other courts have held that

---

**16.** Plaintiff also argues that the APA § 3105, together with the Hearing, Appeals and Litigation Law (Lex) ("HALLEX") and Program Operations Manual System ("POMS"), the procedure and policy manuals of the Office of Hearings and Appeals, requires that ALJs be assigned to cases in rotation, thereby creating a legal duty of the Syracuse Hearing Office Chief Administrative Law Judge Tarrant to make case assignments such that there is rotation between six remote hearing sites by all ALJs. ALJ Tarrant, according to plaintiff, has admitted, however, that he has no intention to assign cases to rotate ALJ Russell away from Corning, despite allegations made regarding ALJ Russell's alleged unfair bias toward claimants. I need not consider whether HALLEX and POMS create judicially enforceable remedies that can be enforced through mandamus. At least one Circuit Court of Appeals has held that they do not. *See Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir.2003). The Second Circuit has yet to address this issue. *See Tineo ex rel. Tineo v. Barnhart*, NO. 01 Civ. 11636, 2002 WL 31163889 (S.D.N.Y. Sept.30, 2002).

*Lowry* also held the Interim Procedures do not confer a judicially enforceable duty sufficient to satisfy the second element of mandamus jurisdiction. Therefore, a claimant seemingly could not compel the SSA to undertake that review through a mandamus action pursuant to 28 U.S.C. § 1361. *Lowry*, 329 F.3d at 1022–1023. Here, of course, the SSA has already begun a review pursuant to the Interim Procedures. Furthermore, the plaintiff in *Lowry* was an attorney who sought to have an ALJ investigated and removed from hearing any more of his cases. In addition to holding that Lowry could not compel the SSA to begin an investigation into the ALJ, the Court also found that Lowry had no due process claim against the SSA. In so holding, the Court noted that "[l]itigants, of course, have due process rights to unbiased decisionmakers. But their lawyers may not invoke those rights vicariously." *Lowry*, 329 F.3d at 1023 n. 2. Therefore, the Court's decision in *Lowry* has no effect on these cases.

discovery on the issue of bias may be warranted so that a plaintiff can "attempt to convince the district court that a remand to the Secretary for the taking of new evidence is appropriate." *Hummel,* 736 F.2d at 95; *Grant,* 989 F.2d at 1344. Here, however, plaintiff Pronti has filed sufficient evidence regarding ALJ Russell's alleged bias, as outlined above, to convince the Court that a remand is necessary. Accordingly, her motion for discovery is denied at this time.

I note that there may come a point in time in the future of this litigation for plaintiffs to pursue discovery in the district court. That time, however, has not come and will depend on how the administrative proceedings concerning ALJ Russell's alleged bias are conducted.

## VI. CONCLUSION

In *Perry v. Barnhart,* 03–CV–6170, the Commissioner's motion to remand (Dkt.# 3) is granted. Plaintiff's motion for judgment on the pleadings (Dkt.# 6) is denied. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the Commissioner is directed to assign a different ALJ to the case.

In *Joslyn v. Barnhart,* 02–CV–6646, the Commissioner's motion to remand (Dkt.# 12) is granted. Plaintiff's motion for judgment on the pleadings (Dkt.5) is denied. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the Commissioner is directed to assign a different ALJ to the case.

In *Silliman v. Barnhart,* 02–CV–6406, the Commissioner's motion for judgment on the pleadings (Dkt.# 10) is denied. Plaintiff's motion for judgment on the pleadings (Dkt.# 14) is granted, in part. The case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the Commissioner is directed to assign a different ALJ to the case.

In *Pronti v. Barnhart,* 02–CV–6309, the Commissioner's motion to remand (Dkt.# 9) is granted. Plaintiff's motion for discovery (Dkt.# 12) is denied. The case is remanded pursuant to sentence six of 42 U.S.C. § 405(g), in accordance with this Court's Decision and Order, and the Court retains jurisdiction of the action.

In *Ballard v. Barnhart,* 03–CV–6090, the Commissioner's motion for judgment on the pleadings (Dkt.# 5) is denied. Plaintiff's motion for judgment on the pleadings (Dkt.# 8) is denied. The case is remanded pursuant to sentence six of 42 U.S.C. § 405(g), in accordance with this Court's Decision and Order, and the Court retains jurisdiction of the action.

IT IS SO ORDERED.